512            JACKSON :

WOODFIN v. MARKS.

(*Jackson.* May 2, 1900.)

1. PAROL TRUST. *Enforceable when.*

One who, pursuant to a parol agreement with a widow, bids off
for her benefit the lands of her deceased husband sold at ad-
ministration sale for payment of debts, but in violation of that
agreement takes title to himself and sets up adverse claim to
the land, will be compelled, by a Court of Equity, notwith-
standing the statute of frauds, to surrender the benefits of
the purchase to the widow, upon her assumption of all its
burdens and obligations, especially where it appears that she
intended the purchase for herself and children, and that the
land brought more than enough to pay the husband's debts,
and that other bidders were deterred by the representation
made by the successful bidder, that he was bidding for the
♦widow and children. And the same measure of relief will be
granted the widow against a purchaser from such party with
notice of her rights.

Cases cited: Haywood v. Ensley, 8 Hum., 460; Guinn v. Locke, 1
Head, 113; Saunders v. Harris, 1 Head, 185; Parker v. Bragg,
11 Hum., 213; Reynolds v. Baker, 6 Cold., 229; Martin v. Lin-
coln, 4 Lea, 344; Hays v. Worsham, 9 Lea, 595; Thompson v.
Thompson, 48 S. W. Rep., 145 (Ch. App.); McLanahan v.
McLanahan, 6 Hum., 99.

2. TENDER. *Not essential.*

And it is not essential that the widow should, in such case, make
tender of money with her bill. It is sufficient that she agrees
to assume all burdens and obligations of the purchase as the
Court shall declare them.

---

FROM MADISON.

---

Appeal from Chancery Court of Madison County.
A. G. HAWKINS, Ch.

Woodfin *v.* Marks.

A. W. STOVALL for Woodfin.

C. G. BOND for Marks.

WILKES, J. In this cause a demurrer was sustained to the bill, and it was dismissed, and complainant has appealed to this Court. The allegations of the bill, so far as material, are that the complainant was the divorced wife S. H. Woodfin, now deceased, by whom she has two minor children, who reside with her. Woodfin, at the time of his death, owned several houses and lots in Jackson, Tenn., and these were sold for the payment of his debts by the usual Court proceeding. Among others, two lots were sold by decree of the County Court of Madison County, and were bid off by the defendant, L. Marks. The charge in the bill is that before the sale he agreed to bid off these lots for complainant, and that he did so bid them off and obtained them at a price much lower than he could have obtained them for, on account of the sympathy which existed for herself and children, prospective purchasers understanding that the lots were being purchased for them by Marks. The lots were bid off at $1,553, the sale being made the 25th day of March, 1899. The bill further charges that, notwithstanding this agreement, Marks had the sales reported as made to himself and confirmed to him over complainant's protest, and then sold the

20 P—33

property to defendant, Rosenbloom, his associate in business, who had full knowledge of all the facts.

The sale was made, subject to a prior incumbrance for some $600, to the Jackson Building & Saving Association, and to secure purchase money notes to the bank for $200. One-fourth of the bid was required to be paid in cash, and the remainder was to be secured by three installment notes, at six, twelve, and eighteen months. The terms of sale were complied with by Marks, and the sale confirmed to him, over the protest of complainant, on April 1, 1899.

The bill alleges that Marks refuses to allow complainant to repay him the money he has paid out and release him from his further obligations touching the land, or to allow her to have the benefit of the purchase, though she has informed him she was ready to comply with her agreement and had asked to be allowed so to do. She charges that the conduct of Marks was a fraud and deception, and its purpose was to get the lots at a low price, and that the property is worth more than the bids. She proposes in her bill to repay the amounts paid out by Marks, but does not actually tender the money. She expresses also a readiness to relieve him of all liabilities in connection with the purchase. She charges a conspiracy between Marks and Rosenbloom to complicate the title and prevent her

from asserting her rights, and that Marks so manipulated the terms of sale as to make it more difficult for her to comply therewith, so that it renders it difficult to state what she should now be required to do to be substituted to the purchaser, but she is willing to assume his obligations, whatever they may be.

The prayer of the bill is that complainant be decreed to be the purchaser of the lots, and that the decree confirming the sale to Marks be set aside, and that she be allowed to comply with the terms of the sale; that a trust be declared on the lots in her favor, and that Marks be required to account for rents while in possession, and she have credit for same, and that the Court decide what amount she shall pay in order to be substituted to the status of Marks under the purchase, and what else she shall be required to do. But if this cannot be, then that she have an account with Marks, and that he be made liable for the actual value of the lots, and she have decree for the amount in excess of the bid made by him, and to have the rights and equities of herself and Marks adjusted, and for general relief.

The principal defense made by the demurrer is that the agreement set out is in parol, and is therefore void and not enforceable under the statute of frauds, and no right of action arises out of it. It is also said that she does not tender the

money, nor show a readiness and ability to comply with the terms of sale, but only expresses an indefinite desire that she should have an opportunity to do so and for some kind of relief.

We think the statute of frauds does not stand in the way of granting relief in this case. In *Haywood v. Ensley,* 8 Hum., 460, it was said: "The jurisdiction of a Court of Equity to enforce the specific execution of a trust in relation to real property declared by parol at the time of passing the title, if plain and unambiguous in its terms and established by clear and satisfactory evidence, is well established, and the trust, although made with a husband and father, will inure to the benefit of the wife and children, if they have the equitable interest in the property." The facts in that case are very similar to the facts in this. Ensley had agreed, in parol, to purchase land for the benefit of a woman and her children, but instead he had the sale confirmed to himself, and went into possession, and her bill was to have title divested out of him and vested in her and for redemption, and an account of rents and profits, and relief was granted accordingly.

This case is cited and applied in *Guinn* v. *Locke,* 1 Head, 113. In that case Locke redeemed for Guinn, but instead of taking the title to Guinn, took it to Sharp, his brother-in-law, and the Court was of opinion that by this means

a fraud was practiced on Guinn, and it would be inequitable for Sharp and Locke to withhold the land from him. It was said, in substance, that if a party purchase, as the agent of another or for his benefit, the relation of mortgagor and mortgagee will be thereby created, and parol proof of such agreement is not opposed to the statute of frauds, citing cases.

It was also held in that case that it was not indispensable to bring the redemption money into Court, but that Locke and Sharp must be treated as mortgagees, and account as such; and a proper course of proceeding is there set out.

The leading case is also approved in *Saunders* v. *Harris,* 1 Head, 185, and authorities are cited on page 207, to the effect that parol trusts, in both lands and slaves, have often been set up and enforced by the Court. The case is also referred to and applied in *Parker* v. *Bragg,* 11 Hum., 213, and in *Reynolds* v. *Baker,* 6 Cold., 229; *Martin* v. *Lincoln,* 4 Lea, 344; *Hays* v. *Worsham,* 9 Lea, 595.

The case of *Parker* v. *Bragg,* 11 Hum., 213, supra, presents a distinction existing between cases when a party merely agrees in parol that another may purchase at the same price he gives, and cases where he acts as agent and buys in the land upon an agreement that he does so for the other. In the former case, the statute of frauds may be interposed, in the latter it may not.

We think, under the allegations of the bill, the present case falls within the latter class. Counsel for appellee cites us to quite a number of cases and text writers holding a different doctrine. We have not had access to all these authorities, and we do not think it necessary to consider them *in extenso,* as the rule appears to be recognized and established in this State as we have laid it down, whatever it may be elsewhere.

It is well in this connection, however, to call attention to the fact that sec. 7 of the English statute of frauds is not in force in Tennessee, Ohio, North Carolina, Texas, and Vermont, although it is in force in all the other States in the Union, and their decisions are largely based upon its provisions. The substance of the section is that all declarations of trust in real estate shall be manifested and proved by some writing signed by the party creating it, and that all grants or assignments of any trusts shall likewise be in writing. The text-books follow the majority of the States, and lay down a different rule from that prevailing in Tennessee. See Perry on Trusts, secs. 75-77; 3 Sugden on Vendors, 6 Am. Ed., 180.

It is said the case under consideration is distinguishable from the case of *Haywood* v. *Ensley,* 8 Hum., 460, and the other cases above cited, in that, in the latter case, the party to whom relief was granted had an interest in the land in

controversy. But we are unable to see that this can make any difference in the principle involved. Besides, in this case, while complainant brings the suit in her own name, the whole tenor of the bill shows that she was seeking to acquire the land for the benefit of herself and her minor children, the latter being the only heirs of S. H. Woodfin. It appears also from the bill that, although the lots were being sold to pay the debts of S. H. Woodfin, they were worth more than the debts and costs of sale, and even at the price brought there would be a probable surplus, which, under the allegations of the bill, would go to the children as heirs.

The question involved in the case has been recently passed on by this Court, after a very full and able opinion by the Court of Chancery Appeals, reported in S. W. Reporter, p. 145, *et sequente*—in case of *Thompson* v. *Thompson*. In that case the Tennessee authorities are cited and commented upon, commencing with *McLanahan* v. *McLanahan,* 6 Hum., 99, and reviewing those subsequent thereto. Cases from other States are also cited. Such as *Boswell* v. *Cunningham,* 32 Fla., 277 (21 L. R. A., 54); *Rose* v. *Hayden,* 35 Kan., 106 (10 Pacific Rep., 554); *Wolford* v. *Herrington,* 74 Pa. St., 311; *Switzer* v. *Skiles,* 8 Ill., 529; *Sweet* v. *Jacocks,* 6 Paige, 355, and these are commented upon.

This case presents such an exhaustive review of

the authorities and such a satisfactory discussion and adjudication of the question, that we need only refer to it and add that it was approved by this Court at the time, October 25, 1899. In that case, a husband bid off property in the name of his wife, saying he was buying it for her, at less than its value, and it was held that an express trust was created in his wife's favor not within the statute of frauds as that statute has been adopted and enacted in Tennessee.

It was also held that aside from the doctrine of express parol trusts, a constructive trust or trust *ex maleficio* arose from the purchaser taking title to himself, in violation of his agreement, and he took the title as trustee for his wife, and the Court would declare him such trustee to prevent fraud, in consequence of his having bought the land for her at a reduced price.

We do not mean to say that the complainant can have the County Court sale set aside and herself substituted as purchaser in that Court under the original cause, nor do we intend to say to what relief she is entitled, further than to say that, upon the facts stated in the bill, she is entitled, as between herself and Marks, to have the benefit of this purchase upon the terms of the agreement, and such conditions as may be proper, and under the allegation of collusion on the part of Rosenbloom she will not be prevented from having such relief by the fact

of his purchase. The answer and further development of the case will determine the particular relief to which complainant may be entitled, if any, but we think the bill requires an answer, and the decree of the Court below sustaining the demurrer is reversed, and the cause remanded for answer and futher proceedings. The appellee will pay costs of appeal.