## W. T. Young v. G. W. Brown *et ux.**

### (*Knoxville.* September Term, 1916.)

1. **HUSBAND AND WIFE.** Conveyance to husband and wife. Title. Entireties.

.Under a conveyance of land to husband and wife, they take by the entireties, nothing else appearing. (*Post, pp.* 187, 188.)

Cases cited and approved: Taul v. Campbell, 15 Tenn., 319; Fowlkes v. Wagoner, 46 S. W., 586.

2. **HUSBAND AND WIFE.** Conveyance to husband and wife. "Bodily heirs."

A conveyance to husband and wife reciting that, if the husband died without bodily heirs, the wife should take by survivorship, and if she died without issue, he should take an undivided moiety, conveyed to her an undivided half in fee absolutely and to the husband a fee subject to a condition in her favor in case he should die without children; the term "bodily heirs" meaning children as used. (*Post, pp.* 188-191.)

3. **HUSBAND AND WIFE.** Conveyance by wife for husband. Effect of agreement by third person to reconvey.

Conveyance by a wife of land in her own right to a third person for reconveyance to herself and husband was not unlawful, although the deed recited the proposed reconveyance. (*Post, pp.* 191-193.)

Cases cited and approved: Campbell v. Taul, 11 Tenn., 548; Taul v. Campbell, 15 Tenn., 319.

4. **HUSBAND AND WIFE.** Wife's general estate in land. Con- for security of husband's debt.

for the security of her husband's debts, a wife may convey, in a trust deed carrying a power of sale, all of her general estate in the land. (*Post, pp.* 191-193.)

Cases cited and approved: Voorhies v. Granberry, 64 Tenn., 704; McFerrin v. White, 46 Tenn., 500; Thompson v. Thompson,

---

*For authorities passing on the question of tenancy by entireties, see comprehensive note in 30 L. R. A., 305.

The question of liability of estates by entireties for husband's debts is discussed in a note in 36 L. R. A. (N. S.), 205.

Young v. Brown.

54 S. W., 145; Woodfin v. Marks, 104 Tenn., 512; Mee v. Mee, 113 Tenn., 453; Insurance Co. v. Waller, 116 Tenn., 1; Pritchard v. Wallace, 36 Tenn., 405; Hardison v. Billington, 82 Tenn., 346.

5. **HUSBAND AND WIFE.** Conveyance by wife for husband.

A married woman, by deed with privy examination and joined by her husband, may convey her land to a third person, and reconveyance by that person to her husband is a valid transaction; fraud being out of the way. (*Post, pp.* 191-193.)

6. **TRUSTS.** Oral trust. Statute of frauds.

A parol trust to reconvey, attached to a conveyance absolute on its face is valid; the seventh section of the English statute of frauds not obtaining in Tennessee. (*Post, pp.* 191-193.)

7. **HUSBAND AND WIFE.** Decree.

Where, before the married woman's act of 1913, a husband and wife sold property as to which they were in dispute as to their respective proportions of ownership, a decree that each should have half the money according to an alleged agreement between them was not erroneous in any respect open to complaint by the wife, since, if she had consented to the sale of her land without such agreement, the husband would have taken the whole. (*Post, pp.* 191-193.)

FROM McMINN.

Appeal from the Chancery Court of McMinn County.—Foss H. MERCER, Chancellor.

ESTILL & NORMAN, for appellant.

JONES & DAVIS, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

Mrs. Rosa S. Brown, being the owner of two tracts of land in her own right, lying in McMinn county, this State, united with her husband, G. W. Brown, in a deed to W. T. Lane, the brother of Mrs. Brown. This deed, after the conveying words, contains the following:

"Be it known, however, that this conveyance is made to W. T. Lane only that he may make an instanter deed to us, thereby conveying the fee from Rosa Brown to herself and husband, to wit, George W. Brown, who has this day purchased from her a one-half undivided interest in said two tracts of lands, the consideration to be shown in the deed from said W. T. Lane to us of even date herewith, the purchase price to be shown in said deed. The purpose of making this conveyance is to effect much-needed and valuable improvements on the farm for the want of which it is greatly reduced in value at present, and to secure said G. W. Brown for all improvements and expenditures of labor and money enhancing said farm in value in the event of his surviving me, but not to be effectual to convey the entire estate absolutely."

On the same day W. T. Lane conveyed the lands to Brown and wife, adding at the close of the deed the following:

"It is agreed that, in the event of G. W. Brown dying without bodily heirs, Rosa S. Brown takes

by survivorship, and in the event of Rosa S. Brown dying without issue, the said doctrine does not apply by survivorship, but it is expressly understood that G. W. Brown shall take and hold, in that event, an undivided moiety hereby conveyed, and be discharged from accounting for any unpaid balance of money to Rosa S. Brown, or her heirs. These tracts of land were this day conveyed by said Rosa S. Brown to me for the said purpose of obtaining a reconveyance to the parties and on the terms heretofore set out, all of which are fully understood and agreed by the parties in interest.''

The foregoing deeds were made with a view to the rule that under a conveyance of land to husband and wife they take by the entireties, nothing else appearing. *Taul* v. *Campbell*, 7 Yerg., 319, 27 Am. Dec., 508. This accounts for the language used in the reconveyance to Mrs. Brown; but, inasmuch as the conveyance to G. W. Brown was different, the rule could not apply. The result is that under the second deed Mrs. Brown took an undivided half of the land in fee absolutely, while G. W. Brown took a defeasible estate; that is, a fee subject to a condition in favor of Mrs. Rosa S. Brown, in case G. W. Brown should die without children (the term ''bodily heirs'' meaning children as used), which, on a proper construction of the words ''Rosa S. Brown takes by survivorship,'' would permit her to enter upon the happening of the condition (4 Kent Comm., marg. p. 9), in this construction treating Mrs. Rosa S. Brown

as the real grantor of G. W. Brown, as indeed she was, through Lane as an intermediary. If the language which creates the condition could be held as creating a conditional limitation (*Fowlkes* v. *Wagoner* [Ch. App.] 46 S. W., 586 *et seq.*), possibly it would have to be disregarded, and the estate treated as a fee simple, since estates to which conditional limitations are attached belong, it seems, only to wills and to conveyances to uses (4 Kent Comm., marg. p. 128).

It is insisted for Mrs. Rosa S. Brown that, inasmuch as she was married at the time the deeds were made, and as they imported a contract between her and her husband, the transaction was void in so far as it purported to deprive her of any part of her title.

We do not think it has been doubted, since the celebrated case of *Campbell* v. *Taul,* 3 Yerg., (11 Tenn.) 548, decided in 1832, that such a transaction is lawful.

That case was notable for more reasons than one. It appeared that the young, beautiful, and brilliant wife of Thomas P. Taul, a prominent young lawyer of Winchester, Tenn., when she was in very poor health, and not long before her death, desired to so arrange her lands that her husband could enjoy them. Being advised that she could not make a will, she adopted the plan of joining her husband in a conveyance to a third party, with the understanding that that party should immediately reconvey to the

husband. At the same time she had an agreement with her husband that he would make a will by which this property should go to certain of her kin, in case it should not be consumed by him during his lifetime. He was in feeble health, and her anticipation was that he might have to sell it and use the proceeds, or a part thereof, for his support. The husband accordingly made a will which the wife was induced to believe answered the purpose. She and her husband then joined in the deed. Her acknowledgment was taken before Judge N. W. Williams, the judge presiding over the circuit court in Franklin county. Judge Williams did not take this acknowledgment in the courthouse, in open court, but did so at a private house, on account of Mrs. Taul's illness. After Mrs. Taul died her husband had an acrimonious controversy with the relatives of his deceased wife, resulting in his own death, he having been shot and fatally wounded by Anderson, the brother of his wife. After he had been so shot, he changed his will and devised the property to his father, Micah Taul. After the death of Thomas P. Taul a litigation arose over the title thus claimed by Micah Taul. A singular incident of the litigation was that Judge Wlliams, who took the acknowledgment, was charged with having done so fraudulently and with having made a false and corrupt certificate for the purpose of aiding Thomas P. Taul to obtain the property of his wife, and he was forced to defend, before the Senate of Tennessee, articles of im-

peachment, based on this ground.  The records of that trial are to be found in our State library, and it is worthy of note, in passing, that the evidence of that case contains an eloquent letter written by this interesting young woman, about the time that the deed was executed, showing her unbounded love for, and confidence in, her husband.  Similar letters are also referred to in the opinion of Chief Justice Catron in the case of *Campbell* v. *Taul*.  The case is also noteworthy for the fact that it contains a very remarkable dissenting opinion by a member of the court subsequently known as one of the great triumvirate composed of Green, Reece, and Turley.  This dissenting opinion was a very earnest and eloquent one, quite extended and directed to the purpose of proving that Thomas P. Taul had practiced a fraud upon his wife.  Another memorable feature about the case was a mistake which Chief Justice Catron made on an important point of law on pages five hundred and sixty and five hundred and sixty-one of 3 Yerg., which he subsequently acknowledged and corrected in full in the case of *Taul* v. *Campbell,* 7 Yerg., 319, 27 Am. Dec., 508.

Now, it is true that in this case the court did not, in so many words, say that such a contract could be made by a husband and wife, by the device of executing a deed to a third party and having a reconveyance, but it was treated as being well-settled law, and, notwithstanding the very strong objection which Mr. Justice Green had to the result reached, he no-

where intimated any doubt as to the existence of the principle, and Judges Peck and Whyte distinctly concurred in all the Chief Justice said, except in the matter of the mistake of law which I have mentioned, which concerned the question whether a conveyance of realty to husband and wife would make them tenants in common only or tenants by the entireties; Chief Justice Catron holding that they would be tenants in common only.

Ever since the decision in *Campbell* v. *Taul,* so far as we know, this question has remained at rest; and, indeed, we can see no objection to it on principle. There is no doubt that the wife could convey all of her general estate in land for the security of her husband's debts in a trust deed carrying a power of sale, and in that manner might lose all of her lands. *Voorhies* v. *Granberry,* 5 Baxt., (64 Tenn.) 704; *McFerrin* v. *White,* 6 Cold., (46 Tenn.) 500. It never has been doubted that a married woman, by deed with privy examination and joined by her husband, could convey her land to a third person, and that a reconveyance by that person to her husband would be a valid transaction, fraud being out of the way. Of course, under such a transaction it would be inferred that there had been a tacit agreement, if not in words, that the reconveyance should be made. How could it alter the result that an agreement was made imposing a trust on the vendee or third person to make the reconveyance? Indeed, we do not doubt that under such an arrangement the

parol agreement to make the reconveyance would attach to the estate going into the hands of the vendee, and if he should attempt to violate it and hold the property for himself, he could be compelled in equity to make the reconveyance, since in this State the seventh section of the English statute of frauds does not obtain, and such a parol trust would be valid. *Thompson* v. *Thompson* (Ch. App.) 54 S. W., 145; *Woodfin* v. *Marks,* 104 Tenn., 512, 58 S. W., 227; *Mee* v. *Mee,* 113 Tenn., 453, 82 S. W., 830, 106 Am. St. Rep., 865; *Insurance Co.* v. *Waller,* 116 Tenn., 1, 8, 95 S. W., 811, 115 Am. St. Rep., 763, 7 Ann. Cas., 1078.

However, it is possible that the foregoing discussion is unnecessary, since, though the question has been raised and discussed at length in the briefs in this case, it appears that the husband and wife, together, long after the foregoing transaction, sold the land and conveyed it to another person, and the contest between them is now over the purchase money. It was agreed at the time the land was sold that each should have half the money, and the chancellor so decreed. The wife has appealed from this decree. She did not contend that there was any agreement that she should have more. There was certainly no error in this decree, since if the wife had consented to a sale of her land without such agreement with her husband he would have taken the whole. *Pritchard* v. *Wallace,* 4 Sneed, (36 Tenn.) 405, 70 Am. Dec.,

Young v. Brown.

254, and cases cited; *Hardison* v. *Billington*, 14 Lea (82 Tenn.), 346, 349, 350.

The transactions in the present case all arose prior to our married woman's act passed in the year 1913, and therefore that statute has no bearing upon the controversy.

The result is the decree of the court of civil appeals is affirmed.