FRED F. WALLACE, et al. v. C. M. P'POOL, et al.

Eastern Section. July 3, 1926.

Petition for Certiorari denied by Supreme Court, October 11, 1926.

1. **Trusts.** A parol contemporaneous agreement made at the time of the execution and delivery of a deed that the vendee will hold the property conveyed in trust for the vendor is valid.

A parol contemporaneous agreement made at the time of the execution and delivery of a deed to real estate that the vendee will hold the prop-

erty conveyed in trust for a certain person is not within the Statute of Frauds and such a parol contemporaneous agreement is valid and may be enforced by a court of equity.

2. **Trusts. Evidence. Evidence held to show a valid parol trust.**
    Where the evidence showed that the wife was the owner of land and was about to submit to a serious operation, and without consideration conveyed the land to her husband with the oral understanding that if she should recover the land was to be reconveyed to her, held to establish a valid parol trust not within the Statute of Frauds.

3. **Estoppel. Person entitled to real estate under parol trust is estopped to enforce the trust against an innocent purchaser of the property from the record holder of the title.**
    It is well settled that although a person may be entitled to enforce a parol trust and recover real estate from the record holder thereof, yet he will be estopped to enforce the trust against an innocent purchaser of the land from the record holder of the title.

4. **Estoppel. The same rule applies to a creditor who has extended credit to the record holder of the title on the strength of his ownership of the property.**
    Where credit is extended on the strength of a recorded deed to the party receiving the credit, even though at the time of the execution of the deed there was a parol contemporaneous trust binding between the vendee and the vendor, the vendor will be estopped to assert title to the property, as against such creditors, even though in the meantime the vendee has reconveyed the property to the vendor, but not until after the credit had been extended.

5. **Estoppel. Estoppel will not be invoked unless the conduct of the party has prejudiced the rights of party seeking to invoke the estoppel.**
    A party will not be estopped from asserting the truth or invoking the rights which he is otherwise entitled to unless by his conduct another's rights have been prejudiced.

6. **Estoppel. Evidence. Evidence in the instant case held to show that there were no acts to constitute an estoppel.**
    Where the evidence showed that the creditor did not examine the records to ascertain that the property stood in the name of the person to whom he extended credit, and there were no representations made on the part of the real owner of the property, but the creditor simply relied on general rumor that the party to whom he extended credit owned the land held there was not sufficient evidence to show that the creditor had relied upon any action or conduct of the real owner of the land in extending credit to the record owner which would entitle the creditor to invoke the rule of equitable estoppel.

Appeal from Chancery Court of Hamilton County; Hon. W. B. Garvin, Chancellor.

Reversed.

Brown & Noone, of Chattanooga, for appellant.

Sizer, Chambliss & Johnson of Chattanooga, for appellee.

SENTER, J. The record in this case discloses that complainant Fred F. Wallace was the owner of sixty-six shares of the capital stock of the C. M. P'Pool Hardware Company, a corporation doing a hardware business in the City of Chattanooga, and that on No-

vember 14, 1921, he sold his sixty-six shares of the stock to defendant C. M. P'Pool and for the purchase of this stock the defendant C. M. P'Pool executed a series of notes payable to Wallace, all of the notes being in the sum of $200 each, except the last note, which was for the sum of $156.39. These notes were made payable one each month. The notes provided that in the event they were collected by attorney that attorney's fees would be paid by the maker. At the time this suit was instituted, several of these notes had been paid, leaving seventeen notes of the denomination of $200 each, and one note for the sum of $156.39 unpaid aggregating the sum of $3,556.39.

It appears from the record that the P'Pool Hardware Corporation had been wound up in bankruptcy and paid about twenty-eight per cent of the indebtedness of the corporation. In August, 1923, after the P'Pool Hardware corporation had been wound up in bankruptcy the defendant C. M. P'Pool filed a voluntary petition in bankruptcy in the United States district court for the southern division of the eastern district of Tennessee, and in which proceedings he was duly adjudged a bankrupt, and Bradley L. Dunlap was elected, appointed and qualified as trustee in bankruptcy of the said C. M. P'Pool. It also appears that after the said Bradley L. Dunlap had been appointed and qualified as trustee in bankruptcy of the said C. M. P'Pool, he filed an original bill in the chancery court of Hamilton county against the said C. M. P'Pool and wife, Mrs. Maude D. P'Pool, seeking to set aside certain conveyances to certain real estate which had been conveyed by C. M. P'Pool to Mrs. Maude D. P'Pool his wife, by deeds dated January 9, 1923, purporting to convey a farm described in the pleadings of thirty-five acres, by one deed and a house and lot situated in Highland Park described in the pleadings, by another deed.

In that suit it was alleged that these conveyances to this property were fraudulent and void and that the trustee in the bankruptcy proceedings was entitled to have the deeds held to be void as to the creditors of C. M. P'Pool and the property subjected to the debts of the creditors of C. M. P'Pool. That case was tried in the chancery court of Hamilton county and the Chancellor filed a written finding of facts and conclusions of law and decreed accordingly.

It was decreed by the Chancellor in that case in substance:

1. That the proof did not show, after excluding incompetent testimony, that Mrs. Maude D. P'Pool furnished all of the means with which the real estate referred to in the pleadings was purchased, although the evidence showed that she did furnish a large part of the money, and that at the time she conveyed the property to her husband, through J. F. McConnell, Trustee, she must be treated as the rightful and beneficial owner thereof and entitled to do with it as she pleased.

2. That the conveyances made by Mrs. Maude D. P'Pool to her husband, C. M. P'Pool through said J. F. McConnell were without any valuable consideration. That the court was further of the opinion that a parol trust was created as contended by the defendants in that case, and that the parol trust was fully established by the testimony of the defendants and witnesses; that by this testimony it appeared that said conveyances were made upon the agreement of the defendant C. M. P'Pool to reconvey the property to his wife in the event she recovered from the operation, and that this trust was valid as against the creditors of said C. M. P'Pool; that the creditors are not the creditors of the donor of the trust but are creditors of C. M. P'Pool and this trust was valid as against the creditors of the said C. M. P'Pool and they did not merely as such creditors have any right superior to any trust.

3. That if the said Maude D. P'Pool permitted her said husband to hold himself out as the real owner of said properties and that if any of the creditors were induced to extend credit to him upon the faith of his apparent ownership, she is estopped to assert the trust as against such creditors' rights; but the court was of the opinion that the rights of such creditors would be personal to them and the trustee in bankruptcy of C. M. P'Pool could not assert such rights on behalf of creditors.

4. That so far as the conveyance of the thirty-five acre farm described in the bill, and as to the interest of the defendant, Maude D. P'Pool as tenant by the entirety in Lot No. 10, Block 46, James Addition to Highland Park, are concerned the complainant was not entitled to maintain the bill and the same was dismissed.

5. That the conveyance by defendant C. M. P'Pool to his wife and co-defendant, Maude D. P'Pool, dated January 9, 1923, of said Lot No. 10 above referred to, was without consideration and was presumptively fraudulent as to the existing creditors of C. M. P'Pool and that the defendants had not overcome the presumption of fraud; that the only other property owned by said C. M. P'Pool at the time of said conveyance was his stock in the C. M. P'Pool Hardware Company, and a part of which had been hypothecated, and that the proof showed that it was not intrinsically worth the amount of the indebtedness of P'Pool; that as to the conveyance of said Lot No. 10, the conveyance was declared void and the bill sustained as to that conveyance.

6. From so much of the decree in that case as adjudged that there was competent evidence to establish a parole trust in favor of the defendant, Maude D. P'Pool, on the lands conveyed by her to her husband, through J. F. McConnell in December, 1919, and from so much of said decree as adjudged that a valid trust could be set up by parol against the creditors of C. M. P'Pool, and from so much thereof as adjudged that the complainant as trustee in bankruptcy

of C. M. P'Pool cannot set up and assert the rights of creditors of C. M. P'Pool, who were induced to extend credit to him on the strength of his ownership of the lands conveyed to him by his wife, and from so much of said decree as declined to set aside the conveyance by the defendant C. M. P'Pool to his wife of thirty-five acre farm described in the bill, and from so much of said decree as held and adjudged that the interest of the defendant Maude D. P'Pool in Lot # 10, Block 46, James Addition to Highland Park, cannot be reached by the complainant as trustee in bankruptcy of the said C. M. P'Pool, the complainant prayed an appeal to the Supreme Court at Nashville.

Under the re-organization of the Court of Appeals the case was transferred to the Court of Appeals at Nashville, where the appeal is now pending.

After the Chancellor had decreed as above set forth in the case of Bradley E. Dunlap, Trustee, v. C. M. P'Pool and wife, the complainants in the instant case filed the original bill in this cause. By stipulation of parties the record and depositions in the former case were made a part of the record in this case, with only one additional deposition taken. Practically the same questions were made with reference to the conveyances made by C. M. P'Pool to his wife, Maude D. P'Pool in January, 1923, to the two respective pieces of property, the thirty-five acre tract of land and the house and lot, as being fraudulent, especially as to complainants in this case.

It is contended by complainant that at the time complainant Fred F. Wallace sold his stock in the C. M. P'Pool Hardware Company to C. M. P'Pool and accepted the notes of said C. M. P'Pool in payment for said stock, that the credit was extended upon the faith of representations made by C. M. P'Pool that he was the owner of the thirty-five acre tract of land and the house and lot referred to in the pleadings, and that defendant C. M. P'Pool represented to complainants that he was the owner of both said pieces of property, and in fact the outstanding legal title of record in the Register's Office of Hamilton county, Tennessee, to this property was in defendant C. M. P'Pool. It was further contended by complainants that very little if any of the money or property of Mrs. P'Pool was ever actually invested in either of these pieces of property and that the taking of the title in her name to the property was the result of fraudulent collusion between C. M. P'Pool and his wife.

The Chancellor held in the present case and so decreed that Mrs. P'Pool was the owner of the thirty-five acre tract and was a tenant by the entirety of the other property described in the pleadings, and that she conveyed this property through Mr. McConnell as trustee, to her husband because of her then state of health, and without any consideration, but with the specific agreement upon the part of defendant C. M. P'Pool that upon her recovery from the operation

and if she so desired the defendant C. M. P'Pool would reconvey the property to her. The Chancellor further held that this constituted a parol trust, and that a parol contemporaneous agreement, made contemporaneously with the execution of the deed that the property would be reconveyed, constituted a valid trust, enforcible by Mrs. P'Pool. But the Chancellor further held and so decreed that because of the action of Mrs. P'Pool in holding her husband out as the real owner of the property and by not disclosing the secret trust under which she claimed, and because of the fact that the complainant Wallace extended credit to defendant C. M. P'Pool on the strength of the representation made that C. M. P'Pool was the owner of said property, that defendant Mrs. P'Pool was now estopped to assert her equitable right to the property against the claim of complainant.

From this decree the defendants have appealed to this court and have assigned errors as follows:

"1. The Chancellor erred in holding and declaring that complainant accepted the notes sued on in the bill and extended credit to the defendant P'Pool on the faith of the ownership by P'Pool of said real estate, and in holding that the said complainant would not have accepted said notes and extended said credit except upon the belief and assurance that said defendant actually owned said farm.

2. The Chancellor erred in holding and decreeing that the defendant C. M. P'Pool conveyed the farm and also his interest in the Highland Park lot described in the bill to his wife and codefendant, without any consideration paid at the time, and the Chancellor erred in holding that the promise and agreement of the defendant to convey said property was secret and unknown to complainant; and in holding that the said farm and Highland Park lot covered practically all the property of any value owned by defendant, and in holding said defendant did not retain sufficient property to pay his debts.

3. The Chancellor erred in holding and adjudging that the conveyance of said farm was void as against the rights of the complainants, and in holding that the complainant is entitled to set aside the conveyance of said farm and to subject the same to the payment of the indebtedness of the defendant P'Pool to the complainant Wallace."

These three assignments of error will be grouped and disposed of together as they present practically the same questions of law and fact.

We are of the opinion that the Chancellor reached the correct conclusion in holding that a parol contemporaneous agreement made at the time of the execution and delivery of a deed to real estate, absolute upon its face, that the vendee will hold the property conveyed in trust for the vendor, and to reconvey the property to the vendor, constitutes a trust in favor of the vendor. This question has been before the Supreme Court of this State in several cases and

is now well settled in Tennessee, that a parol contemporaneous agreement made at the time of the execution and delivery of a deed to real estate, that the vendee will hold the property conveyed in trust for a certain person, is not within the statute of frauds, and that a trust created by a parole contemporaneous agreement is valid, and may be enforced by a court of equity. Thompson v. Thompson, 54 S. W., 145; Renshaw v. First Nat. Bank, 62 S. W., 205; Woodfin v. Marks, 104 Tenn., 519; Mee v. Mee, 113 Tenn., 455; Insurance Co. v. Waller, 116 Henn., 1.

In Woodfin v. Marks, supra, in the first headnote, it is said:

"One who, pursuant to a parol agreement with a widow bids off for her benefit the lands of her deceased husband sold at administration sale for payment of debts, but in violation of that agreement takes title to himself and sets up adverse claim to the land, will be compelled, by a court of equity, notwithstanding the statute of frauds, to surrender the benefits of the purchase to the widow, upon her assumption of all its burdens and obligations. . . ."

In the early case of Heywood v. Lindsay, 8 Hum., 460, it is said by the court: "The jurisdiction of the court of equity to enforce the specific execution of a trust in relation to real property declared by parol at the time of passing the title, is plain and unambiguous in its terms and established by clear and satisfactory evidence, is well established, and the trust, although made with the husband and father, will enure to the benefit of the wife and children if they have the equitable interest in the property."

In Insurance Co. v. Waller, supra, the Supreme Court, speaking through Chief Justice Shields on this subject, states:

"We are of the opinion that a valid express trust, involving real estate, enforcible in equity, can be created by parole, and that, other questions out of the way, such a trust was created by the agreements made by W. A. Hyde and Mrs. Medora Waller, at the time the property in question was conveyed to them respectively, that they held it in trust for R. W. Waller, to be conveyed upon his request as he should direct."

"It is now well settled law in Tennessee that a contemporaneous parol agreement, made at the time of the execution and delivery of a conveyance of real estate absolute upon its face that the vendee will hold the property conveyed in trust for a certain person, is not within the statute of frauds, and aside from the rights of creditors of the original vendor and innocent purchasers of the vendee vest in the beneficiary of the trust a valid equitable title to the property conveyed, which a court of equity will enforce."

We have carefully examined the evidence in the record, held by the Chancellor to be competent, and concur in the conclusions of fact with reference to the ownership of the thirty-five acre tract having vested in Mrs. Maude P'Pool by the deed to this property executed to her in 1916, and that she was the owner of the thirty-five-acre tract at the time she executed the deed to McConnell as Trustee, and the property conveyed by McConnell to her husband C. M. P'Pool. We deem it unnecessary to review at length all the evidence in the record with reference to her purchase of this property, or the source from which the purchase money came, but we think the great preponderance of the evidence is to the effect that the major portion of the money invested in the thirty-five-acre tract to which title was taken to Mrs. P'Pool was derived from her property, and that she was the owner of the property at the time of the transaction resulting in the property being conveyed through her trustee McConnell to her husband, C. M. P'Pool. We are also of the opinion that at the time she made the conveyance she was in serious physical condition, and had shortly prior to that time undergone one operation, and was then in the hospital for the purpose of undergoing a very seious operation, the result of which she greatly feared would be fatal. We think it clear from the record that she was desirous of conveying this property to her husband so that in the event she did not recover from the operation her husband would have the absolute title to the property. It is also clear that at the time the conveyance was made the matter of her making a will devising this property was suggested to her, and she expressed a preference to deed the property outright, but on the condition that in the event she should recover from the operation her husband would reconvey the property to her. This agreement upon the part of the husband was made in the presence of two disinterested witnesses of high personal character and integrity. The conveyance was evidently a voluntary conveyance upon her part and was without valuable consideration. We think the evidence in the case abundantly supports the conclusion reached by the Chancellor that at the time she made the deed, and at the time of the delivery of the deed, there was a specific parol agreement on the part of the husband that in the event of her recovery, and upon her request he would reconvey the property to her. This constituted a parol trust, not within the Statute of Frauds, and valid.

The Supreme Court in Insurance Co. v. Waller, supra, has said that when such a trust is created, "and aside from the rights of the creditors of the original vendor and innocent purchasers from the vendee vests in the beneficiary of the trust a valid equitable title to the property conveyed, which a court of equity will enforce."

At the time Mrs. Maude P'Pool, through her trustee McConnell, conveyed this property to her husband, C. M. P'Pool, so far as this

record discloses, she did not owe any debts. It is not contended that this deed executed by her to her husband, through her trustee Mc-Connell, was intended to defeat any rights of her creditors, or that she had any creditors at that time. We do not find anything in the record that would warrant a conclusion that this conveyance was made by Mrs. Maude P'Pool for any fraudulent purpose. We think it clear under the record that she made the deed in the utmost good faith because of her serious physical condition necessitating an immediate serious operation which she thought would probably result in her death, and in which event she desired her husband to have this property free and unembarrassed.

We think it equally clear that the conveyances made by her were with the distinct and specific understanding and agreement with her husband that in the event of her recovery he would reconvey the property to her upon her request. There is no material evidence in the record to the contrary. This deed seems to have been executed in the fall of 1919. It also appears from the record that Mrs. Maude P'Pool, after the second operation, continued in very bad health, and it was thought for a long times that she would have to undergo another serious operation. The surgeon who performed the second operation continued to treat her for some time, and it was not until about December, 1922, that her physician and surgeon was able to satisfy her that another operation would not be necessary, and that she had so far improved that he thought her full recovery was certain. Upon this advice from her physician and surgeon, and upon her knowledge of her greatly improved condition, she desired to have her husband, C. M. P'Pool, reconvey the property to her which she had conveyed through her trustee to him in 1919, and upon her request and in pursuance of his contemporaneous parol agreement made at the time the property was conveyed to him, he reconveyed the property to her by deeds dated January 9, 1923. It is these conveyances that were attacked by complainants in the original bill filed in this cause. It is contended for the complainants that the C. M. P'Pool Hdw. Company, a corporation, with the capital stock largely owned by C. M. P'Pool, had become insolvent and had gone into bankruptcy about the time these conveyances were made by C. M. P'Pool to his wife, Mrs. Maude P'Pool; that he had disposed of all the property which he had owned, and that the only property which he owned at that time was his stock in the hardware company which company had failed; that C. M. P'Pool, in August, 1923, filed a voluntary petition in bankruptcy in which he listed as his only assets his stock in the hardware company, and this stock was of no value. It is further contended by complainants that at the time the complainant Wallace sold his stock in the hardware company to C. M. P'Pool on a credit, taking P'Pool's notes in the sum of $200

each in payment, that the credit was extended to C. M. P'Pool on the strength of P'Pool's ownership of the real estate made the subject of this litigation, and upon the representations made by C. M. P'Pool that he was the owner of the property covered by the two deeds in question; that the recorded title to this property was then in C. M. P'Pool. It is further contended for complainants that C. M. P'Pool was the real owner of this property all the time; that while the legal title to the farm of thirty-five acres was taken in the name of his wife when the same was purchased, that the purchase was negotiated by C. M. P'Pool, and that C. M. P'Pool paid for the property, and that the vesting of the title in his wife was without consideration and void; and that he was the real owner of the property at the time Mrs. P'Pool, through her trustee McConnell, conveyed the property to her husband in 1919.

As above set forth in this opinion we do not think that the complainants have sustained the allegations in the bill to the effect that this thirty-five acres was in fact the property of C. M. P'Pool at the time it was purchased and the title vested in his wife. As above stated, we are of the opinion that Mrs. Maude P'Pool was the owner of the property, and that she had the legal title thereto at the time of her conveyance in December, 1919.

The serious question presented by this appeal, we think, is whether under all the facts and circumstances Mrs. P'Pool is estopped from asserting claim and ownership to this property against complaniants' claim. It is true she conveyed this property through the trustee McConnell to her husband in December, 1919. Assuming that at the time she made the conveyance there was a parol contemporaneous trust whereby the property should be reconveyed to her in the event of her recovery and upon her request or demand, and as before stated, we think this fact is supported by a preponderance of the evidence, has she by any act or statement estopped herself from asserting her claim to the property against the claim of complainant? The complainant states in his deposition that he did extend the credit to C. M. P'Pool in the sale of the stock on the strength of representations made to him by C. M. P'Pool that C. M. P'Pool was the owner of the property. He does not claim that he examined the records in the Register's Office and from an examination of the records found the outstanding legal title to the property in C. M. P'Pool and extended the credit to him on the strength of the record title being in C. M. P'Pool. He does not claim to have had any knowledge that Mrs. P'Pool ever owned or had any interest in the thirty-five-acre tract. It seems that he did make inquiry of McConnell with reference to the expediency of selling his stock to C. M. P'Pool on the terms upon which the sale was made. He did not approach McConnell on the subject because he had any knowledge of the fact that McConnell

had anything to do with the transaction by which this property was conveyed through him by Mrs. P'Pool to her husband, C. M. P'Pool, but approached him on the subject and sought his advice because he knew that McConnell had been employed in the hardware store operated by C. M. P'Pool, and because he thought that McConnell was well acquainted with C. M. P'Pool and his financial condition. McConnell testified in the case as a witness for complainants, and stated that Wallace did advise with him on the matter of selling his stock in the hardware company to C. M. P'Pool on the terms which C. M. P'Pool proposed to buy it, viz. taking P'Pool's notes with the stock certificates as collateral, and that he advised Wallace that he thought the sale on the terms suggested would be all right, and at the same time stated that P'Pool owned the property in question. McConnell did not, it appears from his evidence, make any statement to Wallace with reference to his having been connected with the transaction in which this property was conveyed to C. M. P'Pool, but did mention the fact that P'Pool owned the thirty-five acre tract and the house and lot in question. It also appears that Wallace was indebted to the American Trust & Banking Co., of Chattanooga, at the time he sold this stock to C. M. P'Pool, and that this stock was held by the American Trust & Banking Co. as collateral security for Wallace's indebtedness to the bank in about the sum of $6,000. It also appears that in making this sale of the stock to C. M. P'Pool that the notes executed by C. M. P'Pool with H. F. P'Pool signing the notes, for the purchase of this stock, that Wallace was to deliver the notes to the American Trust & Banking Co. together with the certificates of stock put up as collateral security thereto, as collateral security to his indebtedness to said bank, and that Mr. Griswold, the Cashier of the American Trust & Banking Company, advised Wallace to make the sale on the terms as stated and that Mr. Griswold realized that the Wallace debt to his bank would be thereby better secured. It appears that Mr. Griswold understood in a general way that C. M. P'Pool was financially responsible and owned the property involved in this litigation. It also appears that at the time Wallace sold this stock to C. M. P'Pool he considered that the stock was worth what P'Pool agreed to pay him for it. He did not ask P'Pool for any additional security at the time he made the sale of the stock, and did not request that he execute a trust deed to him securing the notes, but accepted the notes secured only by the stock in the hardware company which was made collateral security to the notes. Wallace does not claim that he ever discussed the matter with Mrs. Maude P'Pool, but claims that he did not know that she owned or claimed to own any interest in the property involved. C. M. P'Pool, both in his answer to the original bill and in his deposition, denies that at the time he purchased this stock from

Wallace he represented to Wallace that he was the owner of the property in question or made any statement to him whatever with reference to the property. He denies all the material allegations in the bill.

Under the facts as above set forth, the question is presented on this appeal, are the complainants entitled to have the conveyances made by C. M. P'Pool to Mrs. Maude P'Pool to the thirty-five-acre farm and the house and lot, and especially the thirty-five-acre tract, set aside and the property subjected to the debt of complainants against the said C. M. P'Pool?

It is well settled, we think, that the parol trust in favor of Mrs. C. M. P'Pool would not protect her against an innocent purchaser of this property from her husband, C. M. P'Pool, during the time the legal title to the property of record was outstanding in C. M. P'Pool. Insurance Co. v. Waller, supra.

In Schnee v. Schnee, 23 Wis., 377, 99 Am. Dec., 183, it is said by the court after a discussion of the facts in the case, and referring to an equitable claim or title to the land involved in that case; "Under these circumstances we have no hesitancy in saying that he is estopped from setting up any equitable title in the land as against a purchaser for value from his father without notice of his claim."

In Eldridge v. Walker, 80 Ill., 270, the court says: "If a person holding the legal title permits the record title to remain in another, who sells the property to a third person who makes valuable improvements on it the real owner will not be permitted to set up his claim."

In Pence v. Arbuckle, 22 Minn., 417, it is said: "If the owner of land executes a deed with a blank space for the grantee's name and places it in the hands of an agent for the purpose of having the property sold and the agent fills the blank with his own name and subsequently conveys the property to a third person ignorant of the facts in the case, the true owner will be estopped from claiming the title as against him."

In a note to the case of Breeze v. Brooks, 22 L. R. A., (Cal.), the editor says: "There seems to be no question but that if the one having the record title sells the land to a stranger who pays the purchase money to him without notice of the claim of the true owner, the purchaser will acquire a good title." In the same note it is further said: "The cases are not numerous in which the question of estoppel has turned simply on the fact that the record title was in one person while the beneficial title was in another."

It being settled law, at least in this State, if not generally, that a purchaser from one who has the record title to real estate, where such purchaser does not have notice of an equitable title in another, will take a good title, superior to the equitable title claimed by another

but which equitable title or interest in the land is not recorded. Hence, we think it clear that in the instant case an innocent purchaser from C. M. P'Pool of this property while the recorded title was in P'Pool, would take a good title to the property, and a title which would defeat the purely equitable title of Mrs. P'Pool. While this would be true as to an innocent purchaser of P'Pool, does the same rule apply to a creditor who has extended credit to P'Pool on the strength of P'Pool's ownership of the property? We are of the opinion that if the credit is extended on the strength of a recorded deed, showing the record title to be in C. M. P'Pool by a deed executed by his wife, even though at the time of its execution there was a parol contemporaneous trust binding between Mrs. P'Pool and her husband, that Mrs. P'Pool by her deed through which this property is conveyed to her husband, and which deed is placed to record by her consent, would be estopped to assert title to the property as against such creditor, even though in the meantime the husband had reconveyed the property to her, but not until after the credit had been extended.

In the well-considered case of Harris Goldberg v. Albert J. Parker and wife, (87 Conn., 99, reported in 46 L. R. A. (N. S.), 1097,) in the headnote, it is said: "A woman who permits her real estate to stand in the name of her husband for many years until he is accepted as a surety, to release an attachment of property of a corporation in which he is interested, upon the faith of the record title and his assertion of ownership of property, is estopped to assert her title against the right of the purchaser, although she is guilty of no fraud in the transaction."

In Kessler v. DeGarno, Iowa, 127 N. W., 988, it was held that a wife, with whose money her husband purchased land, taking title in himself though they regarded it as her property, who allowed him to hold himself out as owner, is estopped from claiming it as against certain of his creditors, and, as the relief was granted on the ground of estoppel, the rule that all creditors may share in the proceeds upon a fraudulent conveyance being set aside, was not applicable.

In Zehnder v. Stark, 248 Mo., 38, 150 S. W., 92, it was held that a married woman whose husband purchased land in his name with her money, who permitted title to remain in him for years without protest, during which time he contracted debts for the improvement of the land, to her knowledge, is estopped from claiming title as against such creditors, and they are entitled to equitable relief against a deed subsequently made by the husband to the wife.

In Johnson County v. Taylor, 87 Neb., 487, 127 N. W., 862, a wife was held estopped from claiming land as her separate property where she permitted her husband to hold the title thereto and the county accepted him as surety on a county depository bond, on

the strength of information given the county commissioners by the county court clerk that he owned property in the county, though they were not informed as to what particular land he owned or its value.

A number of interesting cases are referred to in the notes in the case of Breeze v. Brooks, 22 L. R. A., 257, and Blake v. Meadows, 30 L. R. A. (N. S.) 1.

In the case of Breeze v. Brooks (Cal.), 22 L. R. A., 256, the facts set forth in the opinion were as follows:

"That the legal title to the land stood in John, he was generally reputed and believed in his neighborhood and among his neighbors and by the community generally, to be the legal and equitable owner of the land; that the deed to him was delivered to him in person by the grantors and was taken by him to the recorder's office for record, and was recorded at his request; that, during the time that it stood of record in his name, it was assessed to him in his name, and that he had paid certain taxes thereon; that in the year 1869 he commenced an action against the Spring Valley Water Works for damages, which, after having been partly tried, was compromised between the parties without going to judgment, under which the defendant paid him certain money, that at the trial thereof Patrick testified as a witness in his favor, and it was stipulated by counsel for the respective parties in open court, and in the presence of Patrick that John was the owner in fee of the land. The court also finds that certain details of the transactions between John and the plaintiffs, by which he incurred the indebtedness for which he gave them the promissory note on which they recover the judgment they are now seeking to enforce, and that during all this time the only information which Patrick had that John was obtaining credit from the plaintiffs, or dealing with them was that he was informed of an error which the plaintiffs made in September, 1872, by charging two items, amounting to about $20, to John, instead of to himself, and of the subsequent correction of the error by transferring the items to his own account."

It was held by the court that the plaintiffs in that case, in order to entitle them to a recovery, should show that Patrick was in some way privy to John's obtaining credit from them, or that in giving such credit they relied upon some affirmative statement or act of Patrick, other than his permitting the title to stand of record in John's name, and that the mere fact that Patrick allowed the title to the land to stand of record in the name of John was unavailing to the plaintiffs, unless they could establish to the satisfaction of the court that they relied thereon as an inducement to give credit to John. The court further says in its opinion: "The findings negative the idea that the plaintiffs, in giving credit to John, relied on

any statement of Patrick that John owned the land, nor is it intimated that they examined the records of deeds, or that of the partition suit, to find out what they disclosed in reference to John's title or relied on them in any way to induce the credit which they extended to John. They seemed to have relied on the facts that John lived on the land, claimed it in his conversations with them as his, and that he was insolvent; and Patrick knew it; and that it all which it is their claim even tends to show Patrick as having been privy in any way to John's obtaining credit from the plaintiffs. So far as the findings disclose Patrick did no act to induce creditors of John to believe the land was John's save that he allowed the title, upon the record to stand in John's name, which record these creditors never examined. It does not appear that Patrick had any knowledge that John was getting credit from anyone upon the faith of his apparent ownership of the land.''

Another interesting case bearing upon the subject now under consideration is that of Blake v. Meadows, 225 Mo. 1, 123 S. W. Rep., 868, also reported and annotated in 30 L. R. A. (N. S.). We will quote the second, and third headnotes which are as follows:

''2. The conveyance by a bankrupt to his wife of real estate which he had purchased with her funds, but held in his own name, cannot be interfered with by the bankruptcy trustee in the absence of anything to estop her from claiming the benefit of the trust.

''3. The mere failure of a woman immediately to enforce the promise of her husband to convey to her real estate which he has purchased with her funds, and the title to which he has taken, without authority, in his own name, does not, in the absence of fraud, estop her from relying on a deed in execution of the promise made after he became bankrupt although he was in business, and credit was given him, without her knowledge, on the faith of the property.''

In a footnote to the above case it is said:

''This note is not intended to cover cases in which there is some positive act or representation on the part of the real owner of the property, intended to mislead a creditor of the apparent owner, nor will it include cases turning upon the interpretation of special statutes governing the subject. The question discussed here is whether the owner who lets the title to his real property stand in the name of another thereby so places it in the power of the holder of the legal title to deceive the latter's creditors, that the owner will not be allowed to assert his rights as against their claims. The rights of bona-fide purchasers and mortgages are not considered.''

In 21 C. J., 1133, sec. 134, the rule is stated:

''It is essential to an equitable estoppel that the person asserting the estoppel shall have done or omitted some act or changed

his position in reliance upon the representations or conduct of the person sought to be estopped."

In 2 Pomeroy's Equity Jurisprudence (4 Ed.), sec. 805, pp. 1644, the general rule is stated as follows:

"1. There must be conduct—acts, language, or silence— amounting to a representation or a concealment of material facts. 2. These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3. The truth concerning these facts must be unknown to the other parties claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4. The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable, that it will be so acted upon."

We will not burden this opinion with all the numerous Tennessee cases on the subject of what constitutes an equitable estoppel, or an estoppel in pais. The following quotation from the case of Rogers v. Colville, 145 Tenn., 650, is sufficient to state the view of our own Supreme Court:

"A party will not be estopped from asserting the truth or enforcing a right which he is otherwise entitled to, unless by his conduct another's rights have been prejudiced."

In the case of Southern Coal Co., etc., v. Schwoon, 145 Tenn., 191, it is said: "To entitle a party to rely on alleged equitable estoppel, it must appear that he has been prejudiced in his rights thereby in some way, since estoppel is founded in fraud in the sense that the person estopped is considered to have misled another to his prejudice, so that it would work fraud to allow the true facts· to be proven." The court said in that case that no fault was to be found in the statement of the rule in 21 C. J., 1135, as follows:· "In order to create an estoppel the party pleading it must have been misled to his injury; that is, he must have suffered a loss of a substantial character, or had been induced to alter his position for the worse in some material respect. As otherwise expressed, where no available right is parted with and no injury suffered, there can be no estoppel in pais." Again, in Rogers v. Colville, supra, it is further said: "The act relied on must have been done with the knowledge or intent that it would be relied on by the other." Early v. Williams, 135 Tenn., 261; Taylor v. Railroad, 8 Tenn., 228; Smith v. Smith, 8 App. Cas., 332; Dickerson v. Colgrove, 100 U. S., 580, 25 L. Ed., 618.

Applying the general rule of equitable estoppel, or an estoppel in pais to the present case, the material inquiry is, what representation, act, or conduct upon the part of Mrs. Maude P'Pool, against whom

the rule is invoked in this case, that would warrant the application of the rule so as to estop her from asserting her claim to the property involved in this suit? It is not contended by complainants that she made any statements, or representations to complainants, or either of them, that C. M. P'Pool was the owner of this property, or to the effect that she did not claim interest therein. The representations with reference to the ownership of the property made by C. M. P'Pool to complainants were not made in her presence, and she was given no opportunity to deny any statements that C. M. P'Pool, or others, may have made to complainants with reference to the alleged ownership of the property by her husband. So far as this record discloses the one and only act by Mrs. Maude P'Pool that could operate as an estoppel against her was the making of the deed vesting the title to this property in her husband, although impressed by a parol trust in her favor, and permitting the deed to be placed to record by her husband, thereby holding him out to persons dealing with him, as the owner of the property. If complainants, or either of them, extended credit to C. M. P'Pool on the strength of the record title to the property being in him, and not merely upon representations made by him that he was the owner of the property, which representations were not made in the presence of his wife, or with the knowledge of his wife, Mrs. Maude P'Pool, then we think by the weight of authority on the subject, Mrs. P'Pool would be estopped from asserting ownership to the property so as to defeat the complainants in the collection of their debt against C. M. P'Pool. Complainants do not contend that they relied upon the recorded title to the property being in C. M. P'Pool at the time the credit was extended. It is conceded, as we understand the record, that complainants did not examine the records in the Register's Office to ascertain if the record title was in C. M. P'Pool. The question then arises, and we think the determinative question in the case is, were the complainants, or either of them, deceived or mislead by the act or conduct of Mrs. Maude P'Pool with reference to the conveyance of this property to her husband? Did they rely upon that act on her part in extending the credit to C. M. P'Pool? From all the evidence in the record, we are constrained to answer this question in the negative. It is admitted by complainant Wallace that he had no knowledge of the fact that Mrs. P'Pool had conveyed this property to her husband. In fact, it is fairly apparent from his evidence in the case that he never knew that Mrs. P'Pool owned the property at any time. He did not examine the records in the Register's Office nor did he have the records examined for the purpose of ascertaining whether P'Pool owned the property. He seems to have relied upon representations made to him by C. M. P'Pool, and the general impression extant that the property belonged to C. M. P'Pool. While it is true, if he had in

fact examined the records in the Register's Office he would have found the recorded deed vesting the title to this property in C. M. P'Pool. As before stated, if he had relied upon the record title to the property being in P'Pool, and extended the credit on the faith and knowledge obtained from the records in the Register's Office, it would present a different question, and, as above stated, would have presented a proper case for the application of the rule of equitable estoppel against Mrs. Maude P'Pool. But such are not the facts as disclosed by the record. Not having relied upon any act or conduct of Mrs. Maude P'Pool in extending credit to her husband, we are of the opinion that he cannot invoke the rule of equitable estoppel, or an estoppel in pais, against her. It does not even appear in the record that Mrs. Maude P'Pool even knew that credit had been extended to her husband by complainants, and certainly it does not appear that she was ever consulted either with reference to the extension of credit to her husband, or with reference to the ownership of the property involved.

We are, therefore, of the opinion that the learned Chancellor was in error in holding and decreeing that Mrs. Maude P'Pool is estopped from asserting her title and ownership to the thirty-five acre tract in question, and in setting aside the conveyance of this property made to her by C. M. P' Pool pursuant to the contemporaneous parol trust agreement, and in decreeing a sale of the property for the satisfaction of the judgment rendered in the cause against C. M. P'Pool. The judgment against C. M. P'Pool for the unpaid balance on the notes, and the interest thereon and the attorney's fees as decreed by the Chancellor against C. M. P'Pool, is affirmed. So much of the decree as adjudges and decrees that Mrs. Maude P'Pool is estopped from asserting her ownership to the thirty-five acres of land, and in holding that the conveyance of the same to her by her husband is void as to complainants, and in ordering said land sold for the satisfaction of the judgment decreed against C. M. P'Pool, is reversed, and a decree will be entered here in accordance with this opinion. The cost of this appeal will be paid by complainants, and surety on the appeal bond.

We will add that because of the questions involved in the case of Bradley v. Dunlap, Trustee, etc., v. C. M. P'Pool and wife, and now pending on appeal before the Middle Section of the Court of Appeals, and the appeal in this case involving some of the same questions of law and fact, it was deemed expedient that both the Middle Section and the Western Section of the Court of Appeals confer on this case, and which was done, with the result that this opinion is concurred in by all members of the Middle and Western Sections of this court.

Heiskell and Owen, JJ., concur.