ABRAHAM G. SWITZER *et al.* plaintiffs in error, *v.* RACHAEL SKILES *et al.* defendants in error.

### *Error to Winnebago.*

The statute regards improvements of settlers upon the public lands as property, the proper subject matter of binding contracts between individuals, and subject to the control and disposition of the law. Their interest may be sold on execution, and the purchaser may maintain an action of ejectment for the possession, and the defendant cannot deny his title. But these rights cannot be enforced as against the United States, or its grantee, and they cease altogether on the alienation of the land by the Government.

It is a familiar rule, that a defendant cannot by demurrer rely on the Statute of Frauds, unless it clearly appears upon the face of the bill that the agreement is within the provisions of the Statute. The Statute only establishes a rule of evidence, and does not change the mode of pleading an agreement.

If a party claim the benefit of the provisions of the Statute of Frauds, he must specially insist on it in his answer, or set it up by way of plea. The defence may be waived, and if not interposed in one of these modes, the defendant will be deemed to have renounced the benefit of the Statute.

A person who agrees to act for another is not allowed to deal in the business of the agency for his own benefit; and if he take a conveyance in his own name of an estate which he agreed to purchase for another, he will, in Equity, be considered as holding the estate in trust for his principal.

A mere agreement to execute a trust *in futuro*, without compensation, is not obligatory; but when the trust is undertaken and actually commenced, the trustee is bound to proceed and execute it with the same diligence and good faith, as if he were to receive a liberal reward for his services. The confidence reposed in him, the actual entering on the duties of the trust, and the injury which may result to the beneficiary, if he do not faithfully fulfil it, are regarded as a good and sufficient consideration.

Where a sale of land is made at public auction, and all persons are at liberty to bid, an agreement among different claimants to different portions of the land with an individual to purchase the whole tract for their benefit, is not such an agreement as is calculated to prevent competition and thereby to render the sale void.

BILL IN CHANCERY for relief &c., in the Winnebago Circuit Court, heard before the Hon. Thomas C. Browne, upon a demurrer to the bill, which was sustained and the bill dismissed at the cost of the present plaintiffs in error, who were complainants in the Court below.

The several causes of demurrer are fully stated and commented on by the Court in their Opinion.

*J. Marsh,* and *A. T. Bledsoe,* for the plaintiffs in error.

*J. Butterfield,* for the defendants in error.

The Opinion of the Court was delivered by

TREAT, J.   In May, 1844, A. G. & W. N. Switzer, filed their bill in chancery in the Winnebago Circuit Court, against Skiles and others, alleging in substance, that on the 18th of June, 1841, they recovered a judgment in the Jo Daviess Circuit Court against the defendant J. B. Miller for $748·62, and on the same day sued out an execution directed to the sheriff of Winnebago county, which was received by the sheriff on the following day, and by him levied on lots eight and ten, in block fifteen, in the town of Rockford; that said Miller was then and had been for several years in the actual possession of said lots, and claiming to be the owner of the same, and on which he had erected a tavern house and several out-buildings; that on the same day, but before the levy, said Miller made and deposited in the recorder's office several mortgages on the lots to the defendant Skiles, Huston, J H. Miller and Brice, purporting to secure them in the payment of debts amounting to upwards of three thousand dollars; that the mortgages were never delivered to the mortgagees, who all resided out of the State, and were the relatives of J. B. Miller, but were made for the fraudulent purpose of defeating the complainants in the collection of their judgment; that on the 5th of October, 1841, the lots were sold on the complainants' execution and purchased by them for $790·89, the amount of their judgment and costs, and that they have become entitled to a deed, the lots never having been redeemed; that at the time of the sale, the title to the township of land in which the village of Rockford was situated, was in the United States, and so remained until November, 1843; that in October, 1843, after said township was proclaimed for sale, the occupants and claimants of lots in the town of Rockford, (the same having pre-

viously been laid off into town lots,) held a public meeting to select some person to attend the sale, and bid off the tract of land embracing the town, in trust for the owners of the lots; that the meeting was attended and its proceedings approved by the defendants, Haight and Udell, and said Haight was appointed to bid off the land in trust for the several claimants of the lots, he assuring them that he would faithfully execute the trust, and each claimant was to pay his proportion of the purchase money, and expenses, which, it was estimated, would amount to fifty cents per lot; that at the same time it was agreed by all the claimants to the lots, including the defendants Haight and Udell, that a committee should be appointed, and which was then appointed to investigate all conflicting claims to lots, and their decision was to be conclusive between the parties, and Haight agreed that he would abide by the decision of the committee and convey the lots accordingly; that the committee met previous to the sale, and the complainants, and the defendant J. B. Miller, on the behalf of the mortgagees, appeared and submitted their respective claims to the lots, but the committee postponed their decision until after the sale should take place; that the complainants tendered Haight one dollar, the amount to be paid for the lots in question, which he declined to receive for the reason that the conflicting claims were then undetermined, but said he would be governed by the decision of the committee; that on the 3d of November, 1843, Haight, in pursuance of the agreement, purchased the land in his own name, in trust for the respective owners of the lots, and at the time and afterwards admitted that he acted in the capacity of trustee; that soon after the committee decided that Haight should convey the lots in question in trust for the complainants and the mortgagees, after paying $200 to the person of whom Miller purchased the lots, and complainants prepared a deed in accordance with the decision and requested Haight to execute it, at the same time offering again to pay him the purchase money and expenses, but he declined executing the deed on the ground that the decision was contrary to law, and because J. B.

Miller had threatened him with a law suit, but agreed that he would make no conveyance to the prejudice of the complainants' rights; that the complainants then offered to indemnify him against all consequences of executing the deed, and he agreed to make no conveyance until a bond of indemnity could be obtained by the complainants, who resided in St. Louis, but in violation of the agreement he conveyed the lots to Udell for the benefit of J. B. Miller; that said Miller induced Haight by pecuniary considerations to make the conveyance to Udell, and that it is the design of the defendants to secure the title of Miller, beyond the reach of his *bona fide* creditors, he, in the mean time, having been discharged from the payment of his debts under the bankrupt law of the United States, without including the property in question in his schedule; that since the conveyance to Udell, Miller has exercised the same acts of ownership over the premises as before, and that on the 17th of April, 1844, Udell advertised the lots for sale for the purpose of carrying out the fraud in transferring the title for a mere nominal consideration to Miller for his own use; and the complainants pray that the trusts and limitations in the deed from Haight to Udell may be set aside, and that Udell shall sell the lots, and out of the proceeds pay the complainants' debt, and for general relief.

The defendants filed a demurrer to the bill, and assigned several special causes of demurrer. The Court sustained the demurrer and dismissed the bill; and the complainants sued out a writ of error.

The first cause of demurrer to the bill is, that Miller had no such interest in the lots as could be sold on execution. This position is incorrect. The interest of a defendant in real estate, of which he is in the actual possession, may be sold on execution. The purchaser acquires all the legal interest which the debtor had in the premises, and may maintain ejectment against him to recover the possession. The debtor is estopped to deny the title of the purchaser, and he cannot defeat a recovery by showing title in a third person. It makes no difference to him what may be the rights of the pur-

chaser as against other persons. The purchaser succeeds to all the legal rights of the debtor, and possession is one of those legal rights. A Court will not stop to inquire what title the debtor had. The real owner is not prejudiced by the sale, for he can turn upon the purchaser and compel him to surrender the possession. *Jackson* v. *Sternbergh,* 1 Johns. Cases, 153; *Jackson* v. *Graham,* 3 Caines, 188; *Jackson* v. *Bush,* 10 Johns. 223; *Jackson* v. *Scott,* 18 do. 95. Miller, therefore, cannot raise the objection. The complainants, by their purchase at the sheriff's sale, acquired all the interest which he had in the lots at the date of the levy. He cannot gainsay their title. If they had procured a deed from the sheriff they might have brought ejectment and ousted him of the possession. But under our statute the possession of Miller was liable to sale on the execution. The improvements of settlers on the public lands are regarded by our laws as property, the proper subject matter of binding contracts between individuals, and subject to the control and disposition of the law. In the case of *Turney* v. *Saunders,* 4 Scam. 527, the Court held that a mechanic who had performed labor and furnished materials in the erection of buildings on the public lands, had a lien on the buildings and improvements of the occupant, which he might enforce by judgment and execution. In the case of *French* v. *Carr,* 2 Gilm. 664, it was decided that the claim and improvements of the settler passed to his assignee in bankruptcy. These possessory rights, however, cannot be enforced as against the United States, or its grantee; and they cease altogether on the alienation of the land by the Government. *Cook* v. *Foster,* 2 Ibid. 652. In either point of view, the complainants succeeded to the whole interest of Miller in the lots, whatever that interest was. Upon the showing of the bill, the other defendants stand in no better situation than Miller. The bill alleges that the mortgages were made with the fraudulent design of defeating the complainants in the collection of their judgment; and if this allegation be true, the mortgagees can assert no claim as against the complainants. If the defendants Haight and Udell hold the legal estate in

trust as charged in the bill, they cannot question the right derived by the complainants under the judgment.

The second cause of demurrer is, that the undertaking on the part of Haight was by parol, and therefore void by the Statute of Frauds. It is a sufficient answer to this objection to refer to the familiar rule, that a defendant cannot by demurrer rely on the Statute of Frauds, unless it clearly appears on the face of the bill that the agreement is within the provisions of the Statute. The Statute only establishes a rule of evidence, and does not change the mode of pleading an agreement. The bill in this case does not state whether the agreement on the part of Haight was in writing or by parol. If the undertaking was by parol, and he claims the benefit of the provisions of the Statute, he must specially insist on it in his answer, or set it up by way of plea. The defence may be waived, and if not interposed in one of these modes, the defendant will be deemed to have renounced the benefit of the Statute. Story's Eq. Pl. § 761, *et seq.*; Cooper's Eq. Pl. 256; *Cozine* v. *Graham*, 2 Paige, 177. But if the undertaking was by parol, and the provisions of the Statute were expressly relied on, we are inclined to the opinion that the defence would not avail the defendant. He did not profess to act for himself in the purchase of the lots. He undertook to purchase them for the benefit of those who had succeeded to the possessory rights of Miller. This precluded him from acting on his own account in the transaction. A person who agrees to act for another is not allowed to deal in the business of the agency for his own benefit, and if he take a conveyance in his own name of an estate which he agreed to purchase for another, he will, in Equity, be considered as holding the estate in trust for his principal. *Van Horne* v. *Fonda*, 5 Johns. Ch. R. 388; *Sweet* v. *Jacocks*, 6 Paige, 355. Haight became the agent of the owners of the improvements on the lots, and agreed faithfully to represent their interests. The complainants confided in his assurances and ceased to give any personal attention to the sale of the land. A Court of Equity will not permit the defendant, after obtaining the title to the property under such circum-

stances, to sacrifice and disregard the interests of those for whom he acted, and convert the property to his own use. 1 Story's Eq. Jur. § 223.   To allow him to appropriate to his ownuse the fruits of the purchase, would be permitting him to take advantage of his own wrong, and thereby perpetrate a gross fraud on the complainants.   He cannot escape the consequences of such iniquitous conduct by sheltering himself behind the Statute of Frauds, the provisions of which statute were designed to furnish a protection against fraud, and not to be set up as a shield and support for fraud.

Another cause of demurrer is, that the agreement on the part of Haight was without consideration, and therefore he is not bound to perform it.   He cannot now set up the want of consideration as an excuse for not complying with the terms of his undertaking.   This might have been a valid reason for declining to enter on the performance of his agreement in the first instance, but it cannot shield him from responsibility after he has once entered on the execution of the trust.   It is sufficient that he undertook to perform the trust and thereby obtained the trust property.   A mere agreement to execute a trust *in futuro,* without compensation, is not obligatory; but when the trust is undertaken and actually commenced, the trustee is bound to proceed and execute it with the same diligence and good faith, as if he were to receive a liberal reward for his services.   The confidence reposed in him, the actual entering on the duties of the trust, and the injury which may result to the beneficiary if he do not faithfully perform it, are regarded as a good and sufficient consideration.   2 Kent's Com. 466; *Rutgers* v. *Lucet,* 2 Johns. Cases, 92.

Another cause of demurrer is, that the agreement respecting the purchase of the land was contrary to the policy of the law, and therefore void.   There is no force in this objection. It is difficult to conceive in what manner the Government was to be prejudiced by the making or the carrying into effect of the agreement.   It amounted simply to this: that Haight should attend the sale and purchase the land for the benefit of those having improvements thereon.   The sale was at public auction, and, of course, all persons were at liberty to bid.   The

agreement was not calculated to prevent competition, and in that way lessen the price the Government might obtain. It was a matter of perfect indifference to the Government, whether Haight was to purchase the land on his own account, or as agent or trustee for others.

The foregoing embrace all of the objections taken to the bill which are deemed of sufficient importance to require the special notice of the Court. On the whole bill, we are satisfied that the complainants have shown a fair case for the interference of a Court of Equity. In coming to this conclusion, we have not thought it necessary to take into consideration the appointment of the committee, or its proceedings in the transaction. The bill has merits irrespective of these allegations. We understand the agreement between Haight and the claimants of the lots to be substantially this: Haight was to bid on the land in his own name, and if he became the purchaser, he was to hold the legal estate for the benefit of those having the best right to the improvements; and those entitled to the improvements were to contribute their proportion of the purchase money and the expenses incident to the purchase. In pursuance of these stipulations, Haight became the purchaser, and acquired the legal title; and he may now be charged as trustee by those who had the possessory right to the lots at the time of the purchase, and who have complied with the terms of the agreement. The complainants have performed the agreement on their part as far as the defendant would permit them. Both before and after the purchase, they tendered him the proper proportion of the purchase money and expenses for the lots in controversy. The complainants are, therefore, in no fault. The principal question to arise in the further progress of this case, will be as to the ownership of the improvements. Miller has no claim to the lots whatever. His interest was divested by the sale under the complainants' judgment, by the execution of the mortgages, which, however fraudulent as to creditors, are binding on him, and by his voluntary bankruptcy. It would be an act of gross injustice to allow him to receive the benefits of these improvements, to the exclusion of his honest creditors, who, in all probability, furnished

Boone *v.* Stone *et al.*

him with the means of erecting them. The contest, there-fore, will be between the complainants and the mortgagees. Upon the hearing of the case, the Circuit Court will proba-bly be required to direct the sale of the lots, and a division of the proceeds among the parties according to their re-spective equities. If the mortgages are ascertained to be fraudulent and void as against creditors, the debt due the complainants should be first paid, and the surplus should go to the assignee in bankruptcy of Miller, for the benefit of his creditors generally. But, if there was a valid delivery of the mortgages, and they were given to secure the pay-ment of *bona fide* debts, and filed for record before the levy of the execution, then the amount due the mortgagees must be first paid, and the surplus applied in the liquidation of the complainants' demand.

The decree of the Circuit Court is reversed, with costs, and the cause is remanded for further proceedings, with leave to the defendants to answer the bill.

Justices CATON and KOERNER dissented.

*Decree reversed.*