(No. 26967.—Decree affirmed.)

Michael Kuzlik *et al.*, Appellees, *vs.* Ludwik Kwasny *et al.*, Appellants.

*Opinion filed May 20, 1943.*

Lawrence A. Jacobson, (Louis Hershman, of counsel,) for appellants.

WACHOWSKI & WACHOWSKI (CASIMIR R. WACHOW-
SKI, of counsel,) for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiffs, Michael Kuzlik and Maryanna Kuzlik, filed
their complaint in the circuit court of Cook county seeking
to have a constructive trust declared in their favor in a three-
story brick building in Chicago. Ludwik and Mathilda
Kwasny, grantees of the premises under a deed from John
Klis, were made defendants. They filed their answer, deny-
ing the material allegations of the complaint. The cause
was referred to a master in chancery, who heard the evi-
dence and recommended the entry of a decree granting the
relief sought. Exceptions to his report were overruled by
the chancellor, and a decree was entered finding the equities
to be with plaintiffs and against defendants. The decree
further directed an accounting between the parties for the
purpose of determining the sum required to be paid by
plaintiffs for their deed. The cause is here on appeal, a
freehold being necessarily involved.

Plaintiffs, in 1923, were the owners of the premises,
located at 5144 South Hermitage avenue, Chicago, subject
to a mortgage held by John Klis and Rose Klis. Upon ma-
turity of the mortgage indebtedness, September 24, 1938,
as increased to $7000, and extended, Kuzlik and his wife
were unable to meet the principal, or any part of it. Pur-
suant to an agreement, they conveyed the premises in satis-
faction of their indebtedness to John Klis and Rose Klis,
as joint tenants. After delivery of the deed to John and
Rose Klis, it was agreed that plaintiffs should continue to
reside on the property, collect the rents, make necessary re-
pairs and deliver the net proceeds to Klis's real estate
broker, Lillian Beutler, for him. November 21, 1938, a
short time after Klis obtained title to the property, his wife,
Rose Klis, died. John Klis, then being sole owner of the
real estate, suggested to Kuzlik the inconvenience of hand-

ling Chicago real estate, and expressed his desire to dispose of the property.

May 29, 1940, Klis wrote to Kuzlik stating that he was sick, and requesting him to send some rent money. Michael Kuzlik testified that early in June, 1940, he visited Klis, in La Porte, Indiana, to negotiate for the repurchase of the property. Before departing, he turned over to Lillian Beutler certain rents from the building and obtained from her a check dated June 1, 1940, in the amount of $29.75, payable to the order of John Klis. He arrived in La Porte June 3, 1940, and, according to his testimony, went to the place of business of defendant, Ludwik Kwasny, informed him and his wife of his desire to reacquire the premises, and sought their aid and assistance in inducing Klis, the owner, to resell the property to him. For their efforts in assisting him in regaining the property, Kuzlik testified he offered defendant, Ludwik Kwasny, the sum of $25 whereupon Kwasny stated, "I will help you, and it will be boughten for four thousand dollars." Kuzlik further testified that after this discussion Kwasny directed his son to summon John Klis to Kwasny's tavern; that he delivered to Klis the check for $29.75 which was then cashed by Kwasny; that Kuzlik and Klis discussed the purchase of the property, and that Klis set a figure of $4500; that thereupon defendant, Ludwik Kwasny, urged Klis to resell the property to Kuzlik for $4000, to which proposal Klis agreed, and Klis and Kuzlik shook hands in approval of the bargain. Kuzlik testified further that he returned to Chicago the next day to make arrangements to raise the purchase money, and that he subsequently did arrange a sufficient loan. The master found that Kuzlik had always been ready, willing and able to produce the $4000 necessary to repurchase the property. Uncontroverted testimony shows that Kwasny did not assist Kuzlik in purchasing the property from Klis, but, instead, purchased the property for himself.

Kuzlik's visit to La Porte around June 3, 1940, was denied specifically by Kwasny and his wife, both of whom testified they did not see or talk to Kuzlik at any time after Mrs. Klis's funeral, in November, 1938. They denied the agency or the offer of Kuzlik to pay $25 for their assistance. Both also denied cashing the $29.75 check for Klis. Upon being confronted with the cancelled check, Kwasny admitted his indorsement of it. Kwasny further testified that he first talked to Klis about buying the property for $4000 three weeks before Klis received the cash from him for it. The evidence shows Klis received his first cash payment from Kwasny June 24, 1940. This would place the date of Kwasny's conversation about June 3, 1940. Under cross-examination, Mathilda Kwasny likewise admitted Kuzlik was in La Porte in June, 1940, and that she saw him and Klis in her husband's tavern. She further admitted cashing the check for Klis.

When he testified for defendants at the original hearing before the master, John Klis denied that he met Kuzlik in Kwasny's place of business in June, 1940, or at any other time. However, when shown the cancelled check for $29.75, he, too, admitted its receipt from Kuzlik in La Porte. He further corroborated Kuzlik, stating that Kwasny's son came for him and that the check was given to him in Kwasny's residence. He maintained that he then said nothing to Kuzlik about the property. He admitted writing to Kuzlik May 29, 1940, and, again, on June 19, 1940. Subsequent to his testimony at the original hearing, Klis signed an affidavit, or statement, for plaintiffs in which he charged that Ludwik Kwasny had prevailed upon him to give perjured testimony on the first hearing. The matter was re-referred to the master and Klis testified substantially as set forth in his statement, admitting his previous perjury, and corroborating Kuzlik's version of what occurred June 3, 1940, and the agreement then reached to sell to Kuzlik for $4000. Kwasny did not testify in denial

of this testimony by Klis. The evidence further shows that about a week after his visit to La Porte, Kuzlik wrote to Klis stating that if he came to Chicago with his title papers he would receive his money. Klis testified he showed this letter to Kwasny who stated, "I will buy this house from you. * * * Don't take your title papers to Chicago, because Mr. Kuzlik will take your papers and won't give you the four thousand dollars. * * * You better sell me the property * * * and I will pay you $4000." Thereupon, John Klis, without notification to Kuzlik, sold the property to defendants for the price specified. Shortly thereafter, defendants and John Klis visited plaintiffs in Chicago. Kwasny announced that he had purchased the property from Klis, and that if plaintiffs desired to reacquire the property they would have to purchase it from him. According to the testimony, Michael Kuzlik remonstrated with defendants as to their conduct in so purchasing the property, after agreeing to assist him in procuring it. Defendants thereafter instituted forcible-detainer proceedings in the municipal court of Chicago to dispossess plaintiffs from the premises, and plaintiffs, as part of their relief in the complaint filed in this proceeding, sought an injunction restraining prosecution of the forcible-detainer action.

The evidence also showed that Michael Kuzlik and Ludwik Kwasny were acquaintances since their emigration from the same town in Poland. From the testimony of Kuzlik, it appears that on several occasions when they had business dealings he consulted with Kwasny; that he so consulted Kwasny pertaining to a grocery store previously purchased by him, and with respect to his original purchase of the premises herein involved; that he had known Kwasny since boyhood, and that every time Kwasny came to Chicago or he, Kuzlik, went to La Porte, they would discuss business matters. In connection with the original purchase, in 1923, of the real estate, Kwasny loaned to plaintiffs $1000 in cash, without security. Several years later, when the mort-

gage was refinanced, Kuzlik executed and delivered to Kwasny a judgment note for $1000, evidencing the loan previously made. When Kuzlik became completely unable to meet interest payments and other obligations, Kwasny confessed judgment on the note, thereby creating a lien on the real estate, subject, however, to the $7000 mortgage held by John and Rose Klis. At the time of the conveyance to John and Rose Klis in satisfaction of this mortgage, Kuzlik insisted, and it was provided, that Kwasny should receive $500 on account of his judgment, and that plaintiffs should receive $200 for their deed.

As to the testimony of the defendants, the master found, *inter alia,* that "their entire conduct and demeanor on the witness stand was such that the Master is of the opinion that they deliberately swore falsely concerning the transaction which occurred in La Porte on June 3rd, and their testimony, not being corroborated by any credible evidence anywhere in the record, is not worthy of belief."

In the decree confirming the master's report, the chancellor found that the plaintiffs had proved their case by clear and convincing evidence; that a confidential relation existed between the parties at the time of the acquisition of the property by the defendants from John Klis; that the defendants, Ludwik Kwasny and Mathilda Kwasny, by virtue of their purchase of the property, are holding it and the title thereto in trust for the benefit of plaintiffs; that the defendants abused the confidence reposed in them by plaintiffs in acquiring the property for themselves, instead of aiding the plaintiffs to procure the title thereto, and that the plaintiffs are entitled to the relief prayed for in their complaint.

To obtain a reversal of the decree, defendants make the contention, among others, that the evidence is insufficient to establish a confidential relationship between the parties, and that, in consequence, there was no basis in the evidence for application of the constructive-trust theory. It is

argued that to establish a constructive trust the proof must be clear, convincing and so strong, unequivocal and unmistakable as to lead to but one conclusion, and that here an essential requisite was lacking, namely, a confidence reposed on one side and resulting superiority and influence on the other, and that, therefore, no abuse of such relationship could exist. It is insisted that defendants not only did not agree to help Kuzlik purchase the property from John Klis, but that, on the contrary, they desired to purchase the property themselves.

The evidence pertaining to this contention was conflicting. As previously stated, the master found that such testimony as was produced on behalf of defendants was unworthy of belief, it having been shown they testified falsely on a material matter. Whether plaintiffs have established their right to a constructive trust must, therefore, be determined from the proof adduced by the plaintiffs, which the master held to be convincing. Where a master has heard the oral testimony and a chancellor has approved his findings of fact, they will not be set aside unless clearly and manifestly against the weight of the evidence. (*Pasedach* v. *Auw,* 364 Ill. 491; *Union Colliery Co.* v. *Fishback,* 299 Ill. 165; *North Side Sash and Door Co.* v. *Hecht,* 295 Ill. 515.) The findings were amply supported by the evidence. From Kuzlik's testimony recounting the happenings on his visit to La Porte June 3, 1940, it is evident that Kwasny and his wife undertook for a consideration of twenty-five dollars to be paid to Kwasny to act for Kuzlik as his agents, to assist him in accomplishing the repurchase of the three-story building previously owned by him and relinquished in 1938. An agency relationship was established. The rule is that the relation of principal and agent is a fiduciary one. (*Doner* v. *Phoenix Joint Stock Land Bank,* 381 Ill. 106; *Dennis* v. *McCagg,* 32 Ill. 429; *Quinn* v. *Phipps,* 93 Fla. 805, 113 So. 419.) By assuming to act for Kuzlik, Kwasny took upon himself certain obligations,

among which was the duty not to deal with the subject matter of the agency to his own advantage. *Kochorimbus* v. *Maggos,* 323 Ill. 510; *Reed* v. *Peterson,* 91 Ill. 288; *Trice* v. *Comstock,* 121 Fed. 620.

The evidence proclaims that Kwasny not only failed to perform his agreement, but, on the contrary, deliberately set out to, and did, obtain the property from Klis for himself, in violation of his previous promise to assist Kuzlik. The legal effect of the transaction for his own benefit was the creation of a constructive trust. (*Doner* v. *Phoenix Joint Stock Land Bank,* 381 Ill. 106.) Constructive trusts are raised by equity for the purpose of working out right and justice where there was no intention of the party to create such a relation, and often directly contrary to the intention of the one holding the legal title. (*Kochorimbus* v. *Maggos,* 323 Ill. 510; *Roche* v. *Roche,* 286 Ill. 336.) One general class of constructive trusts consists of those cases in which the existence of a confidential relation and the subsequent abuse of the confidence reposed is sufficient to establish such trust. (*Giese* v. *Terry,* 382 Ill. 34; *Suchy* v. *Hajicek,* 364 Ill. 502.) If an agent undertakes to negotiate for land for his principal, and purchases the property with his own funds and thereby acquires the title, he becomes a constructive trustee for the principal's benefit. (*Doner* v. *Phoenix Joint Stock Bank,* 381 Ill. 106; *Quinn* v. *Phipps,* 93 Fla. 805; *Trice* v. *Comstock,* 121 Fed. 620; *Stephenson* v. *Golden,* 279 Mich. 710; *Lamb* v. *Sandall,* 135 Neb. 300; *Kern* v. *Smith,* 290 Pa. 566; *Krzysko* v. *Gaudynski,* 207 Wis. 608.) Applying these rules to the facts here, the conclusion is impelling that the acquisition by defendants of the property in controversy for their own use, in violation of their agreement to assist plaintiffs in procuring title, created a constructive trust in favor of plaintiffs.

It is next strenuously urged that Kuzlik at the time of his negotiations for the repurchase of the property was, according to his own testimony, a W.P.A. laborer and

possessed of insufficient assets to enable him to handle the transaction, involving an outlay of some $4000, and that it was not possible for him, under the circumstances, to obtain a loan sufficient for the purpose. Similarly, it is insisted that Kuzlik, having admitted his insolvency, was in no position to tender the money required to complete the repurchase, and that, consequently, no valid tender was made by plaintiffs, either before the master or in open court. It must be borne in mind that Kuzlik originally owned the property in question, on which he was previously successful in obtaining a loan of $7000. He testified that he, himself, had about $150 in cash, and that he had been promised assistance by his son to the extent of approximately $500, if the bank refused to furnish the sum required. He also testified that a commitment in writing was given for the proposed loan of $4000 from a building and loan association, and that the transaction was not consummated only because of the failure of Klis to present his papers. In addition, as recounted, the master found that Kuzlik has always been ready, willing and able to produce the $4000 necessary to repurchase the property.

No point was made before the master or chancellor regarding Kuzlik's claimed inability to tender the required money, and a court of chancery is not bound by any fixed rule in relation to such tender. The money may at any time be ordered into court when the right of a party requires it. It is time enough for a party to bring purchase money into court when called upon by the court to do so. (*Webster* v. *French,* 11 Ill. 254.) The decree assailed makes adequate provision with respect to the payment of the money, and the defendants are amply protected, for, if plaintiffs do not, within ten days from the approval of the master's report showing the amount due to the defendants, pay said amount to the master, the decree shall be null and void.

Finally, it is contended that repudiation of an oral contract to purchase land for another does not, of itself, give rise to a constructive trust, and that the circumstances in evidence, namely, a verbal agreement to purchase land for another, constituted a transaction which was void under the Statute of Frauds. The statute does not apply to cases where the law raises a constructive trust, as such trusts are expressly excepted from its operation by section 9. Ill. Rev. Stat. 1941, chap. 59, par. 9; *Giese* v. *Terry*, 382 Ill. 34.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*