John Early, Administrator de bonis non of Estate of Warren Hocker, Deceased, Appellee, v. Garnet Martin, Administrator of Estate of Lane O. Martin, Deceased, Appellant.

Gen. No. 10,144.

Opinion filed April 18, 1947. Released for publication May 5, 1947.

B. JAY KNIGHT and CLIFFORD A. PEDDERSON, both of Rockford, for appellant; FREDERICK H. HAYE and THOMAS A. KEEGAN, both of Rockford, of counsel.

MILLER, THOMAS & HICKEY, of Rockford, for appellee; FRANCIS E. HICKEY and WILLIAM E. COLLINS, both of Rockford, of counsel.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This appeal followed a judgment of the circuit court of Winnebago county setting aside and cancelling cer-

tain releases whereby the Illinois Central Railroad Corporation and Garnet Martin, administrator of the estate of Lane Martin, deceased, were discharged from all liability for the alleged wrongful death of Warren Hocker.

The occurrence, which gives rise to this controversy, had its inception in the death of Warren Hocker which resulted from a collision between the automobile in which he was riding as a guest of Lane Martin and an Illinois Central train at a grade crossing in the City of Rockford on November 5, 1944.

On December 6, 1944, B. B. Early, then public administrator, was appointed administrator of the Hocker estate. On the same day, he filed his verified petition in the probate court for leave to compromise the claim for Hocker's death. This petition set forth that liability was questionable against both the Illinois Central Railroad and the Martin estate, and that the decedent left no known heirs and next of kin him surviving, and that the offered sum of $233 was reasonable. On the same day, the probate court heard evidence upon the petition, and, thereafter, entered an order directing the public administrator to execute releases upon payment of the amount of the settlement.

It was on January 6, 1945 that Marion Hocker appeared in the probate court and offered proof that Warren Hocker was her father, and that he left him surviving Edna Hocker, his widow, and another daughter, Vivian Cline. On October 17, 1945, upon a petition of the public administrator, the probate court entered an order setting aside its order previously entered authorizing the settlement. John Early, present plaintiff appellee, succeeded B. B. Early as public administrator after the latter's death.

On October 17, 1945, this complaint was filed, one count seeking to set aside the releases, the other count claiming damages under the wrongful death statute.

In the complaint, plaintiff alleged that he "Tenders into court the sum of $233.00 to be disposed of by the court in accordance with the rights of the defendants here." The Illinois Central Railroad accepted $150, and abided by the judgment of the lower court setting aside the releases. The administrator of the Lane Martin estate refused to accept the tender of the remaining $83, and challenges, by this appeal, the propriety of the court's order in setting aside the release.

It was claimed in the court below by appellee that the release in question was entered into only as a result of a mutual mistake of a material fact, that had the administrator known that there were a widow and lineal decendants, a paltry $83 would not have been accepted in full settlement of all damages resulting from the death of Warren Hocker.

The appellant contends, first, that the mistake in the existence of a surviving spouse or next of kin is not a mistake of a material fact and is merely a collateral issue. Quoting from appellant's brief: "Liability was in no way affected by a widow and next of kin, however numerous the latter, and however dependent the group, and their existence or non-existence had nothing to do with the fatal crash on the night of November 5, 1944 which snuffed out the lives of both Hocker and Martin." We do not believe this contention bears merit. In evaluating a claim under the wrongful death statute, there are two important and vital factors that must be given consideration; first, the negligent or wanton misconduct of the defendant, the decedent, and next of kin; and, second, the existence of a surviving spouse and next of kin and the extent of their pecuniary loss. Without the presence of the latter, a death claim has no value. As to the former, it is usually a question of fact for a jury to determine. The Supreme Court in the case of *Foster v. St. Luke's Hospital*, 191 Ill. 94, had the following to say on the subject: "At the common law no action could

be maintained for negligently causing the death of a human being, or for any damages suffered by any person in consequence of such death. An action to recover such damages can be maintained, therefore, only by virtue of the statute. (Hurd's Stat. Chap. 70.) It must be brought in the name of the personal representative of the deceased and can only be maintained for the benefit of the persons designated in the statute. If the deceased left him surviving no widow or next of kin there is no cause of action, hence the necessity of alleging and proving that the deceased left him surviving a widow or next of kin." To the same effect is the case of *Lake Shore & M. S. R. Co. v. Hessions,* 150 Ill. 546.

All the parties to the releases in question were convinced that the decedent left no surviving widow or next of kin. This proved to be a mistake about a most vital and material fact.

The next line of thought presented by appellant in support of their contention was that the releases involved herein should not be disturbed because the law favors compromises and that the administrator had full power to compromise the instant claim. The cases cited by appellant in this connection bear no similarity to the situation under consideration here. This principle has no application in cases where substantial justice may be defeated. Equity will relieve where there is a release of a claim for personal injuries executed as a result of a mutual mistake of a material fact. *Fraser v. Glass,* 311 Ill. App. 336; *Boyd v. Aetna Life Ins. Co.,* 310 Ill. App. 547. The court used this language in the case of *Winkelman v. Erwin,* 333 Ill. 636: "A court of equity may rescind a contract at the request of one party who has entered into it, without negligence, through a material mistake of fact, when it can do so without injustice to the other party." In the case of *Fraser v. Glass, supra,* the court said: "A court of equity may grant cancellation where the party

requesting it has entered into a contract without negligence, through a material mistake of fact, when it can do so without injustice to the other party. The fact concerning which the mistake was made must be material to the transaction and effect its substance, and must not result from the want of such care and diligence as would be exercised by persons of reasonable prudence under the same circumstances, and to warrant cancellation the evidence must be clear and positive. (*Smuk v. Hryniewiecki,* 369 Ill. 546, and cases there cited.) The rule puts the burden upon the person seeking cancellation to show the mistake by clear and positive evidence, but no more than that is required. (*Winkelman v. Erwin, supra; Munnis v. Northern Hotel Co.,* 237 Ill. App. 50.) The mutual mistake in the instant case is not only proved by clear and convincing evidence, but it is not questioned by appellants except by the untenable assertion that it was a mistake as to the future. As the suit is based upon a mistake as to appellee's condition at the time the settlement was made, and not upon whether blood clots were then present, it makes no difference whether they were then present, either in an initial or an advanced stage.''

One of the cases relied upon by appellant is that of *Kowalke v. Milwaukee Electric Railway & Light Co.,* 103 Wis. 472, 79 N. W. 762. In that case the plaintiff was injured in a street car collision and releases were executed upon the theory that she was not pregnant and settlement made accordingly. Thereafter, she suffered a miscarriage, which allegedly resulted from the accident. The trial court disregarded the settlement agreement and set aside the releases upon the theory that there was a mutual mistake in effecting the compromise. The Supreme Court of Wisconsin, in reversing the judgment, held that the question of her pregnancy was a collateral one and merely calculated to enhance damages, and the court in its reasoning used this language; ''In a case of doubt like

this, if the doubtful fact is material, parties may compromise and include the uncertainty among those covered by the settlement; they may refuse to settle until the uncertainty is removed, or they may settle everything else, and expressly omit therefrom the specified contingency." In other words, the court recognized that the release obtained was just an ordinary business transaction, free from fraud, where each side calculated their own risks, effected the best bargain possible, and settled accordingly.

Our Illinois court, however, have reached a different result than that obtaining in Wisconsin. In *Fraser v. Glass, supra,* a claim agent made a settlement for a small figure for injuries growing out of an automobile accident. After the releases were executed, and the insured had cashed the check given in consideration therefor, it developed that the insured became seriously ill as a result of blood clots which were traceable to the accident in question. The insurance company claimed that the blood clots were not present at the time of the settlement, and that there was no mistake of fact about her condition at that time, but her more serious condition of illness developed subsequently. The court said at page 341: "Neither is it a suit to set aside the release because blood clots developed, but it is definitely based upon a mistake in appellee's physical condition at the time of the settlement from infection then present, and that her condition was more serious than she or Dr. Williams knew."

A case which we consider quite analogous to the one under consideration is that of *Boyd v. Aetna Life Ins. Co., supra.* In this case, it appears that Jimmie Boyd carried a life and total disability policy with the Aetna Insurance Company. Jimmie and his wife, Christine, became estranged, and he went on the road as an agent for a show. Christine, consequently, never had any contact with him thereafter. She made the payments on the policy, and borrowed money thereon.

She later became involved financially, and cancelled the policy. After paying the loan, there was only a few dollars remaining which she received when she surrendered the policy. It transpired that Jimmie had already died. She brought suit in two counts, one asking for cancellation of releases, and the other asking to recover according to the terms of the insurance agreement. The court reversed the trial court holding that equity should relieve against the enforcement of an agreement executed under a mutual mistake of fact. A "mistake of fact" was there defined as follows: "A mistake of fact has been defined to be a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in an unconscious ignorance or forgetfulness of a fact past or present material to the contract which does not exist, or in the past existence of a thing which has not existed."

It seems clear that Mrs. Boyd would not have cancelled the insurance policy had she not been mistaken as to the existence or nonexistence of her husband. Likewise, it seems clear in the instant case that the administrator would not have settled a $10,000 claim with the State Farm Insurance Company for $83 had it been known that the decedent left surviving a widow and two daughters. Such an inadequate amount lends support to the theory that the administrator labored under the delusion or mistake that he could not make out a case under the wrongful death statute because he could not make proof of the intrinsically important fact that someone suffered a pecuniary loss.

Counsel for appellant make a clever and specious argument that the mistake involved herein involved a state of conscious ignorance, and that equity will not relieve against the consequences of such. The cases cited in support of this argument are so dissimilar to the facts involved herein, and are so clearly distinguishable that we will not burden the opinion with a review of them.

■ We are convinced, therefore, that the proof in this case indicates such a mistake of fact, in the legal acceptation of the term as to warrant a court of equity relieving against the consequences of an alleged mistake of fact.

■ Finally, appellant argues that since there was not a tender made in this case until suit was filed, that such delay should bar any attempt to cancel the release. Most of the cases relied upon to sustain this argument involved actions at law. It has often been held that equity is not bound by the strict rules of tender prevailing in the common law. *Kuzlik v. Kwasny*, 383 Ill. 354. Our Supreme Court in the case of *Kennedy v. Neil*, 333 Ill. 629, at page 634 said: "The technical rules that govern pleas of tender in actions at law are manifestly not applicable to the circumstances of suits in chancery, and a court of chancery is not bound by any fixed rule on this subject by which it will allow the substantial ends of justice to be perverted or defeated by the omission of an unimportant or useless act which nothing but the merest technicality could require." We are afraid that a court of equity would lose much of its prestige as a court of conscience, if it held that the plaintiff's cause of action should be destroyed because of the delay in an offer to repay the defendant its $83.

■ The decree of the circuit court should be affirmed.

*Judgment affirmed.*