(No. 48727.-

ROBERT RAY, Appellant, v. EMERSON J. WINTER
*et al.*, Appellees.

*Opinion filed June 1, 1977.—Rehearing denied Oct. 3, 1977.*

Hill & Caldwell, of Benton, for appellant.

Russell H. Classen, of Belleville, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Robert Ray, brought an action in the circuit court of Franklin County seeking the imposition of a constructive trust upon 40 acres of farmland owned by the defendants, Emerson and Joyce Winter, and damages for lost profits. Plaintiff alleged defendants committed fraud and/or breach of a fiduciary duty arising out of an arrangement reached by them concerning the purchase of the land. Defendants requested that an advisory jury be empaneled to hear the case, and their motion was granted over the plaintiff's objection. Following the hearing, special interrogatories were submitted to the jury asking them to determine if (1) an agreement existed between the parties concerning the purchase of the land; (2) if a fiduciary relationship existed; (3) if fraud was committed by the defendants; and (4) whether defendants used undue influence. The jury returned a verdict answering "Yes" to the first three interrogatories, and "No" to the last. In addition, the jury found the plaintiff to have suffered $2,500 in lost profits.

The trial court entered judgment imposing a constructive trust in plaintiff's favor, and ordered defendants to convey the 40 acres upon plaintiff's payment of $5,333.20, the purchase price of the land. The court also awarded plaintiff $2,500 damages representing lost profits resulting from defendants' failure to convey the land.

On appeal, the appellate court reversed, finding the evidence insufficient to demonstrate either fraud or breach of a fiduciary duty. (39 Ill. App. 3d 567.) This court granted plaintiff leave to appeal.

In July of 1972, plaintiff became interested in expanding his farming operations, and made an inquiry

about a 60-acre tract of land located near his home in Thompsonville, Illinois. He contacted the owner after learning his name from a neighbor, W. Marsh, the owner's overseer, and orally agreed to purchase the entire 60-acre tract for $8,000. Since plaintiff did not have adequate finances at the time, the owner agreed to hold the land for plaintiff until he sold some cattle later that fall.

Shortly thereafter, plaintiff learned that the defendants were also interested in acquiring a tract of land in the Thompsonville area. Plaintiff's wife was a friend of Mrs. Winter, the two having been involved in various church activities together. Defendants visited plaintiff's home in late July. Plaintiff informed Mr. Winter of the availability of acreage, and took him to view the premises. A road divided the 60-acre tract into 40- and 20-acre parcels. Plaintiff agreed to sell defendants the 20-acre tract at the same price per acre that he had agreed to pay the owner. Plaintiff testified, however, that he informed Mr. Winter at that time that no purchase could be made until later that fall when he sold his cattle. Plaintiff and Winter then drove to Marsh's place, where they informed him of the arrangement they had made.

The next contact between plaintiff and defendants occurred on August 15. Apparently prior to this time, another party, Doral Rose, became interested in the 60-acre tract, contacted the owner, but learned that the acreage was not available. Defendants testified that they received a letter from plaintiff's wife on August 15, informing them that another party was interested in purchasing the property, and that defendants might have to do something. That night, defendants phoned plaintiff and expressed concern over the possibility of losing the land. During the conversation, it was agreed that Winter would purchase the entire 60-acre tract. Plaintiff then gave Winter the owner's telephone number, and Winter contacted the owner, arranging for the 60 acres to be sold to

him and his wife, Mrs. Winter.

Plaintiff testified that Winter was going to purchase the 40 acres for his benefit and convey it to him when he sold his cattle in September. After the conversation, plaintiff stated, he contacted the owner, informed him of the arrangement, and gave him permission to sell the land to Winter.

The deeds were not recorded until late October due to difficulties with abstracting. The final installment payment was made shortly before Thanksgiving. Plaintiff testified he sold his cattle in September, and received assurances from his bank that he could obtain the necessary financing. He contacted Winter in October to learn if he could remove the hay and plant his winter wheat, but Winter informed plaintiff that he could not give him permission to enter the premises because the papers had not yet been signed and the property was not his.

Plaintiff and his wife visited the defendants' home shortly after Christmas. Mr. Winter was not home at the time, but Mrs. Winter was, and she informed plaintiff that her husband was thinking about keeping the entire 60 acres. Plaintiff informed her that he wanted his 40 acres. Several weeks later, Mrs. Winter wrote plaintiff's wife and informed her that her husband had decided to keep the entire acreage, which she indicated was not finally acquired until shortly before Thanksgiving.

Plaintiff responded with a letter which was characterized at trial as "nasty." Winter testified he wrote plaintiff back and informed him that if he had not written the letter, they could have worked something out. Winter denied the existence of any agreement with plaintiff and also denied that plaintiff had told him that he was going to sell his cattle in September. Despite his denial of an agreement, Winter's testimony indicated that it was only sometime after the August 15 conversation that he decided to keep the property.

"Q. [plaintiff's counsel] All right. Now you say you bought all 60 acres?

A. Yes, sir.

Q. And on August the 15th, Mr. Ray told you he didn't have the money?

A. That is right. Yes, sir.

Q. Now, is that the date you decided you wanted all the ground?

A. No, no, no, no. That there didn't entertain there—no. When he never called me or let me know a thing about this ground—not a thing—well, I figured the man didn't want it and I definitely wouldn't mortgage my house for another man that I did not know, sir. If he wanted the ground, why didn't he say he wanted the ground or call me up or give me a payment or give me something? I mean, here me—"

While the appeal was pending in the appellate court, plaintiff filed a motion to dismiss citing numerous Supreme Court Rule violations including failure to have the report of proceedings certified by the trial court. All the violations, excepting defendants' failure to secure certification, were corrected prior to oral argument in the appellate court. We, therefore, find it necessary to consider only the certification issue.

The appellate court viewed the lack of certification as a "material omission" pursuant to Rule 329 (58 Ill. 2d R. 329), and amended the report as though it were certified. Plaintiff contends the court misinterpreted Rule 329 and cites two decisions which have specifically held that failure to obtain certification of the report of proceedings requires the dismissal of the appeal (*Morse v. Williams* (1843), 5 Ill. (4 Scam.) 285; *Suttles v. Zimmerman* (1936), 287 Ill. App. 316). These cases, however, were decided prior to the adoption of Rule 329. The rule was intended to serve as "a comprehensive liberalization of the procedure for disputing the accuracy of the record." (Ill. Ann. Stat., ch. 110A, par. 329, Historical and Practice Notes, at 105 (Smith-Hurd 1976).) Certification is designed to

assure the accuracy of the record, but it is not a jurisdictional requirement. Though the appellate court characterized the lack of certification as a "material omission," it would be better characterized as an "improper authentication." When, as here, no prejudice is alleged concerning inaccuracies or omissions in the verbatim report of proceedings, the appellate court, pursuant to Rule 329, may amend the record and treat it as having been properly certified. The appellate court, under the circumstances presented, correctly denied the motion to dismiss.

Plaintiff next contends that the appellate court erred in that it applied the wrong principles of law, and, therefore, employed an improper standard in reviewing the evidence.

Constructive trusts are divided into two general classes: one in which actual fraud is considered as equitable grounds for raising the trust, and the other, where there exists a fiduciary relationship and a subsequent abuse of such relationship. (*Cunningham v. Cunningham* (1960), 20 Ill. 2d 500, 504; *Mortell v. Beckman* (1959), 16 Ill. 2d 209, 212; *Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 493-94; *Kester v. Crilly* (1950), 405 Ill. 425, 431.) In reversing the trial court's judgment, the appellate court held that the evidence failed to adequately demonstrate either fraud or a fiduciary relationship and its subsequent breach.

Fiduciary relationships which do not exist as a matter of law must be proved by clear and convincing evidence in order to establish a basis for raising a constructive trust. (*Cunningham v. Cunningham* (1960), 20 Ill. 2d 500, 504; *Lux v. Lelija* (1958), 14 Ill. 2d 540, 546; *Kapraun v. Kapraun* (1957), 12 Ill. 2d 348, 352; *Kester v. Crilly* (1950), 405 Ill. 425, 432.) Similarly, actual fraud is never presumed but must be proved by clear and convincing evidence. *Carroll v. Caldwell* (1957), 12 Ill. 2d 487, 494;

*Racine Fuel Co. v. Rawlins* (1941), 377 Ill. 375, 380.

Analyzing the evidence in a light most favorable to the plaintiff, we believe the trial court's finding of actual fraud was not established by clear and convincing evidence. There was no showing that defendants, with intent to deceive, made a material misrepresentation of an existing fact. The evidence indicates plaintiff knew another party was interested in purchasing the land, and he agreed to Winter's purchase of the property. Winter's indication to the plaintiff in October that he had not yet obtained the property is supported by the fact that the deeds were recorded during the last week of that month. The evidence also indicates that Winter decided to keep the property only sometime after the August 15 conversation. Further, the letter of January 18 from Mrs. Winter to plaintiff's wife, indicating that they had not finally acquired the property until shortly before Thanksgiving, was not a material misrepresentation inasmuch as the final installment payment to the owner was made at that time.

Although the evidence does not support the trial court's finding of actual fraud, we believe it does support the existence of a fiduciary relationship and its subsequent breach. Normally, proof of a confidential or fiduciary relationship requires a showing that one person has reposed trust and confidence in another who thereby gains a resulting influence or superiority over the other. (*Anderson v. Lybeck* (1958), 15 Ill. 2d 227, 232; *Bremer v. Bremer* (1952), 411 Ill. 454, 465; *Kester v. Crilly* (1950), 405 Ill. 425, 432.) Generally, this is accomplished by establishing facts showing an antecedent relationship which gives rise to trust and confidence reposed in another.

In most cases, a mere oral agreement does not give rise to a confidential or fiduciary relationship. Where, however, one voluntarily acts as an agent for another, a fiduciary relationship exists as a matter of law. (*Bremer v. Bremer*

(1952), 411 Ill. 454, 465; *Kuzlik v. Kwasny* (1943), 383 Ill. 354, 360; *Doner v. Phoenix Joint Stock Land Bank of Kansas City* (1942), 381 Ill. 106, 113.) By Winter's undertaking to purchase the property for the plaintiff, who had a prior existing interest in it, the relationship of principal and agent was created. (Restatement of Restitution sec. 194(2) and comment d (1937); 5 Scott, Trusts sec. 499, at 3543 (1967). See also *Black v. Gray* (1952), 411 Ill. 503; *Kuzlik v. Kwasny* (1943), 383 Ill. 354; *Doner v. Phoenix Joint Stock Land Bank of Kansas City* (1942), 381 Ill. 106; *Dennis v. McCagg* (1863), 32 Ill. 429, 441, 443-45; *Switzer v. Skiles* (1846), 8 Ill. (3 Gilm.) 529, 534.) If the one who undertakes to purchase land for another later refuses to convey, equity will raise a constructive trust and compel him to turn it over to the one equitably entitled to it. *Black v. Gray* (1952), 411 Ill. 503, 506; *Kuzlik v. Kwasny* (1943), 383 Ill. 354, 361.

We believe that it is of little importance that plaintiff permitted Winter to purchase the property in his own name and with his own funds. The mere fact that an agent purchases the property with his own funds does not absolve him of his fiduciary duties. (*Black v. Gray* (1952), 411 Ill. 503, 507; *Doner v. Phoenix Joint Stock Land Bank of Kansas City* (1942), 381 Ill. 106, 114.) Significantly, plaintiff had an interest in this property prior to the parties' arrangement. He located the property, contacted its owner, negotiated the purchase terms, and secured the owner's promise to hold it for him until that fall. The validity of the plaintiff's option, and the owner's honoring of it, is supported by Doral Rose's testimony which indicated he attempted to purchase the property sometime before Winter's and plaintiff's August 15 arrangement, but learned it was no longer available. Winter was serving only as a conduit by which plaintiff was to exercise his option. Following their arrangement, plaintiff released the owner from the option agreement and

permitted him to sell the property to Winter for the plaintiff's benefit. The evidence clearly demonstrates that Winter purchased the property for the plaintiff and then, sometime later, decided to keep all the property for himself. Winter's subsequent decision to keep the 40 acres constituted a breach of his fiduciary duty toward the plaintiff.

We believe the result reached in this case is consistent with other cases wherein a party offers to assist another with the purchase of property in which that person had a preexisting interest. *Kuzlik v. Kwasny* (1943), 383 Ill. 354; *Doner v. Phoenix Joint Stock Land Bank of Kansas City* (1942), 381 Ill. 106; *Kochorimbus v. Maggos* (1926), 323 Ill. 510; *Dennis v. McCagg* (1863), 32 Ill. 429; *Switzer v. Skiles* (1846), 8 Ill. (3 Gilm.) 529.

Accordingly, we find that a fiduciary relationship existed between the parties as a matter of law, and that Winter's subsequent breach of that relationship gave rise to a constructive trust.

In addition to the imposition of a constructive trust, the court awarded plaintiff $2,500 damages, representing the farming profits he would have earned had defendants not refused to convey the property. Defendants contend that the proper measure of damages should be the fair market rental value of the property. In support of their contention they cite *Enright v. Toledo, Peoria & Western Ry. Co.* (1910), 158 Ill. App. 323, and *Ohio & Mississippi Ry. Co. v. Nuetzel* (1892), 43 Ill. App. 108. These cases, however, are clearly distinguishable from the instant case, for they involve tortious damage to property. Plaintiff urges, on the other hand, that the proper measure of damages should be that which one is entitled to recover for actual fraud. As we earlier indicated, the evidence does not support a finding of actual fraud. Consequently, the measurement of damages recoverable in cases of actual fraud is inapplicable to this case.

Our research has not revealed any case directly on point. We believe the situation should be analogized to that of a principal and agent, as it is that relationship which was undertaken by Winter in his agreement to purchase the property on plaintiff's behalf. Section 399 of the Restatement (Second) of Agency provides:

"A principal whose agent has violated *** his duties has an appropriate remedy for such violation. Such remedy may be:
(a) an action on the contract of service."
(Restatement (Second) of Agency sec. 399(a) (1958). See also Restatement (Second) of Agency sec. 400 (1958).)

We believe that plaintiff is entitled to recover the loss of profits resulting from Winter's failure to convey the property to him. Defendants contend that the advisory jury's verdict is not supported by the evidence. Defendants failed to introduce any evidence to contradict the amount of damages sustained by plaintiff. A review of the record indicates that the testimony concerning lost profits establishes sufficient basis for their assessment. (*Barnett v. Caldwell Furniture Co.* (1917), 277 Ill. 286, 289.) Although the trial court was assisted by the advisory jury in assessing damages, the findings are those of the court, and they will not be disturbed unless contrary to the manifest weight of the evidence. *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 311.

Accordingly, the decision of the Appellate Court for the Fifth District is reversed, and the judgment of the circuit court of Franklin County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*