*In re* ESTATE OF NICHOLAS C. GIMPEL, Deceased.—(MARCO J. MUSCARELLO, Ex'r of the Estate of Nicholas C. Gimpel, Petitioner-Appellant, *v.* RALPH DAVID CAMPBELL *et al.,* Respondents-Appellees.)

Second District   No. 77-322

Opinion filed August 15, 1978.

Thomas P. Young, of Wotan, Muscarello, Crisanti & Young, of Elgin, for appellant.

Leo M. Flanagan, of Brittain, Ketcham, Strass, Terlizzi & Flanagan, of Elgin, for appellees.

Mr. JUSTICE BOYLE delivered the opinion of the court:

The estate of Nicholas C. Gimpel, deceased, Marco J. Muscarello, executor, petitioner-appellant, hereafter petitioner, filed a petition for citation to discover information and recover property in an effort to recover for itself the corpus of a trust which passed to respondent-appellee, Ralph David Campbell, upon the death of Nicholas C. Gimpel. At trial, the petitioner endeavored to prove that a constructive trust ought to be imposed on the trust's corpus because a confidential or fiduciary relationship existed between Mr. Gimpel and Mr. Campbell and that Mr. Campbell breached that relationship. After hearing the evidence, the trial court ruled that the petitioner had not proved the existence of a confidential or fiduciary relationship and entered judgment in favor of the

respondents-appellees, Ralph David Campbell and the First National Bank of Elgin, hereafter collectively referred to as the respondents. The petitioner has appealed, contending that the evidence proved that a confidential or fiduciary relationship did exist, that the evidence showed a breach of that relationship, and that the trial court's decision is contrary to the manifest weight of the evidence.

We have reviewed the record, considered the arguments presented and are of the opinion that the judgment of the circuit court of Kane County must be affirmed.

The deceased, Nicholas C. Gimpel, and respondent Campbell first became acquainted in 1961 after Mr. Gimpel had moved to a house on Mr. Campbell's Hampshire, Illinois, mail route. The two men developed a fast friendship after January of 1971, when Mr. Campbell discovered the "half-frozen" Mr. Gimpel lying on the back porch of his house. Campbell provided immediate aid to Mr. Gimpel, and when he returned from the hospital, Mr. Campbell began making almost daily visits to the then 85-year-old Mr. Gimpel. During the course of their friendship, Campbell had occasion to do numerous favors for Mr. Gimpel, ranging from driving him to the store to paying his bills after he gave Campbell the money to do so.

In early 1975, Mr. Gimpel put his small farm up for sale. After signing a sales contract, Mr. Gimpel became hesitant about going through with the deal, so upon the advice of Mr. Lorenz Engelmann, Mr. Gimpel went to attorney Marco J. Muscarello for legal counsel and advice.

It should be noted that Mr. Campbell did not know of Mr. Gimpel's decision to sell his farm until after he had signed the sales contract. Furthermore, Mr. Campbell played no part in Mr. Gimpel's decision to seek legal advice from attorney Muscarello.

Besides representing Mr. Gimpel in the real estate transaction, attorney Muscarello drafted an "interim" will for Mr. Gimpel. That will provided that Mr. Gimpel's entire estate should be equally divided among Mr. Gimpel's cousin, Mrs. Catherine Wolf, another of Mr. Gimpel's relatives thought to be living in South America, and Mr. Campbell. When drafting the will, attorney Muscarello also discussed with Mr. Gimpel the possibility of establishing some sort of trust.

Early in September of 1975, Mr. Gimpel sold his small farm, receiving approximately $40,000. The money was placed in a savings account in the State Bank of Hampshire. Several days thereafter, Mr. Campbell drove Mr. Gimpel to the State Bank of Hampshire so that he, Gimpel, could confer with a bank officer about setting up a trust—an idea Mr. Gimpel had previously discussed with attorney Muscarello. The State Bank of Hampshire official with whom Mr. Gimpel conferred advised him that that bank did not have a trust department and recommended he go to a

larger bank, such as the First National Bank of Elgin. Subsequently, Mr. Campbell drove Mr. Gimpel to the First National Bank of Elgin where he, Gimpel, conferred with Mr. Randy Johnson, the bank's trust officer. Mr. Johnson explained to Mr. Gimpel what a trust was and gave an estimated rate of return. Mr. Gimpel expressed surprise that the rate quoted by Mr. Johnson was not as high as the rate he was earning with his savings account at the State Bank of Hampshire. Finally, Mr. Johnson told Mr. Gimpel if he desired to establish a trust, he should have an attorney draw up an agreement and send a copy of it to the First National Bank of Elgin.

At this point, Mr. Gimpel asked Mr. Campbell to recommend an attorney to draw up the trust agreement. Mr. Campbell recommended attorney John Brittain of Elgin. According to Campbell, Mr. Gimpel asked Mr. Campbell to call attorney Brittain and to relay his (Gimpel's) wishes to him. Campbell did so, and attorney Brittain drafted the trust agreement as requested. That trust agreement created an irrevocable trust with the trustee instructed to pay the income to Mr. Gimpel during his life. The trustee was also empowered to invade the corpus to provide for Mr. Gimpel's needs. Upon Mr. Gimpel's death, the trustee was instructed to pay the entire corpus over to Mr. Campbell.

A copy of the trust agreement was forwarded to the First National Bank of Elgin, which was to act as trustee. The bank found no objection to the trust agreement as drafted. On September 17, 1975, after Mr. Johnson went over the trust agreement with him, Mr. Gimpel signed it at the First National Bank of Elgin. Shortly thereafter, Mr. Gimpel transferred the $40,000 he had in the State Bank of Hampshire to the trust account. In December of 1975, Mr. Gimpel died.

Based on the above facts, the trial court found that the petitioner had not shown that a confidential or fiduciary relationship had existed between Mr. Gimpel and Mr. Campbell and entered a judgment in the respondent's favor. The petitioner appeals.

At trial and before this court, the petitioner's theory has been that a constructive trust for the benefit of the estate should be imposed upon the corpus of the trust because Mr. Campbell breached the confidential or fiduciary relationship that existed between him and Mr. Gimpel. The primary basis for this alleged fiduciary relationship was the extent to which Mr. Gimpel relied upon Mr. Campbell in the conduct of his, Gimpel's, financial and business affairs.

■■ A confidential or fiduciary relationship exists where one person places so much trust and confidence in another that the person thereby gains a position of superiority and influence over the other. (*Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678; *Anderson v. Lybeck* (1958), 15 Ill. 2d 227, 154 N.E.2d 259.) The existence of such a relationship must be proved by clear and convincing evidence. (*Ray v. Winter* (1977),

8

67 Ill. 2d 296.) On review the findings of the trial court will not be disturbed unless they are against the manifest weight of the evidence. *Brown v. Commercial National Bank of Peoria* (1969), 42 Ill. 2d 365, 247 N.E.2d 894, *cert. denied* (1969), 396 U.S. 961, 24 L. Ed. 2d 425, 90 S. Ct. 436.

■■ In the case at hand, the record reveals that Mr. Gimpel sought and received advice concerning his business and financial affairs from people other than Mr. Campbell. He discussed the possibility of establishing a trust with two bank officials and an attorney before he had a trust agreement drafted, and before he signed it had had the trust officer explain it to him. Furthermore, the terms of the trust agreement provided that the trust's income and corpus were to be used solely for Mr. Gimpel's benefit for so long as he lived.

On the basis of such a record, we cannot say that trial court's judgment was contrary to the manifest weight of the evidence. Accordingly, we affirm the judgment of the circuit court of Kane County.

Judgment affirmed.

WOODWARD and GUILD, JJ., concur.